MATTHEW KEITH, Plaintiff in Error, *v.* W. S. QUINNEY, Defendant in Error.

*Error to Multnomah.*

1. The service of the complaint and notice upon a defendant, before the same are filed in the office of the clerk of the Circuit Court, is a good service.
2. In construing statutes, the primary object of the court should be to effectuate the intent of the law maker; and, for such purpose, it is proper for a court to look into the circumstances at the time, and the necessity which called for the enactment of a particular statute.

THE case presents but one question. The complaint and notice were served on the 20th day of May, 1861, and the complaint was not filed until the 30th day of the same month. The defendant below was defaulted. The error alleged is, that there was no legal service, the complaint not having been filed at the time the pretended service was made.

*G. H. Cartter*, for plaintiff in error.

*G. H. Williams*, for defendant in error.

STRATTON, J. By the *Statutes of* 1855, *p.* 85, *sec.* 24, actions at law were commenced "by filing a complaint with the clerk of the court, and the issuing of a summons thereon." Under this enactment there is no question but that the filing of the complaint must precede the service of the summons, and it is insisted that this has never been repealed. As the act of December 10, 1856, (*Session Laws, p.* 18,) and the act of June 2, 1859, (*Session Laws, p.* 17,) are not very clearly drawn, it becomes necessary to examine a little into the circumstances under which these acts were passed, and of the necessity and consequent object of the legislature in making the change, if it was made. The General Laws of 1853-4,

adopted from the report of the Code commissioners of the previous session, radically changed the practice act of the then territory, and created one entirely independent of any former system.

Under the new Code, one or more terms of the District Court were held in each organized county of the territory. An act of Congress, passed August 16, 1856, was supposed to have abolished the District Courts of the several counties, and confined them to be holden at a single place in each district. There could, therefore, be but three places of holding courts in the territory. The clear intent of the act of December 10, 1856, was to conform the practice to this state of things, and make it as convenient, as little expensive and embarrassing to suitors as possible. Each of the three District Courts was, therefore, made appearance or issue terms, where all papers were first to be filed, and the issues made up; afterwards to be sent down to the several counties for trial. The first section of this act provides for the appointment of a deputy-clerk in each county; the second section, that such deputy shall forthwith transmit to his principal the original files of all causes, other than appeals, pending and undetermined, in his county. It is obvious, then, that the deputy was to have the custody of no papers, except as afterwards provided. The third section abolishes the writ of summons, and provides for a form of notice, to be signed by the plaintiff, or his attorney, and attached to the complaint, and served with it. Section four further enacts, that every complaint shall be entitled of the county in which the action would have been triable, under the existing laws. It is important to note this last provision, as indicating that there was no filing of papers in the county when the venue was laid; but this entitling of the cause was for the purpose of guiding the court in disposing of it for trial. The succeeding clause of the same section leaves it entirely optional with the plaintiff as to the place where the defendant shall be notified to appear; and it may be fairly inferred, that the original papers had not yet passed from the plaintiff's hands. Section five gives the first inti-

mation of any filing of papers, and provides *where* it shall be done, and for what purposes.   Taking all these provisions in the order in which they occur, we think it a reasonable inference, that the service was complete before a paper was presented to the clerk for filing.   " It is a sound principle," says the Court of Appeals, in New-York, " that such a construction ought to be put upon a statute, as may best answer the intention which the makers had in view, and that is sometimes to be collected from the cause or necessity of making it ; at other times, from other circumstances.   Whenever the intention can be discovered, it ought to be followed with reason and discretion in its construction, although such construction may seem contrary to its letter." (*Sedgwick on Com. and Stat. Law*, 232.)

This court may properly take notice of the existing state of things when this law was passed.   If the necessity for filing a complaint was not abolished with the writ of summons, as a precedent act to the service of the complaint and notice, then this palpable hardship fell upon litigants, that in many cases suits could not be commenced without many days of expensive travel to the place where one of the three courts of the territory would be held, involving an expense and loss of time, which, in many instances, would have made legal remedies a burden rather than a benefit ; and this, for no other purpose, but simply to place on file a paper.

Is it reasonable to suppose that the legislature lost sight of the only real necessity for a change of the practice ?   The circumstances and the letter of the statute, we think, speak a different language.   We conclude, therefore, that a filing of the complaint, under this act, was not necessary before the service on the defendant.   This act of 1856 has been thus carefully examined, because upon its construction as to this point the existing law must depend.   The act of 1858 repealed most of the act of 1856, but, in terms, re-enacted the portion of it which pertained to the service of summons ; and in the repealing clause specially excepted some enactments which were to follow.   The practice act of 1859 (*Session Laws, p.*

17) abolishes the service by summons, and adopts the service by a notice, &c., and for the third time does so in the exact words of the statutes of 1856 and 1858. It may, therefore, be concluded, that if the first act was intended, and did abolish, not only service by summons, but also dispensed with the necessity of filing the complaint, that the subsequent acts did not revive such necessity, unless it should appear to be so done in direct terms; and since the legislature has not done so, we conclude that the service of the complaint and notice precede the filing in the office of the clerk of the court. The question whether these statutes are repugnant does not arise, if we are satisfied as to the intention of the legislature.

Judgment is affirmed.