[Filed April 30, 1892.]

## W. E. BAKER *v.* N. P. PAYNE.

STATUTORY CONSTRUCTION—ATTORNEY-GENERAL—VACANCY IN OFFICE—ELEC-
TION OF SUCCESSOR.—Section 2 of the act of February 21, 1891, creating
the office of attorney-general, provided that that officer shall be elected at
the general election held in June, 1894; that he shall hold his office for
the term of four years, and until his successor is elected and qualified;
and that his term shall commence on the same day as that of the secre-
tary of state, as now provided by law. Section 5 of the same act provides
that in case of a vacancy in that office, the governor shall appoint a suit-
able person, who shall hold the office until the next general election, when
his successor shall be elected and shall qualify; *held*, that the successor to
the person appointed by the governor when the act took effect, must be
elected at the general election to be held in June, 1892, that being the next
general election occurring after the vacancy in the office happened.

STRAHAN, C. J., dissents.

Linn county: R. P. BOISE, Judge.

Defendant appeals. Affirmed.

*J. K. Weatherford,* and *Blackburn & Watson,* for Appellant.

*Montanye & Hackleman,* and *F. P. Mays,* for Respondent.

*George G. Bingham,* district attorney.

LORD, J.—This is a proceeding for a mandamus, brought
by Wm. E. Baker, who is alleged to be a citizen and voter
of Linn county, Oregon, to compel the defendant and appel-
lant, as county clerk of said county, to correct his notices
of election for the general election to be held in June, 1892,
by naming therein the office of attorney-general for the
state of Oregon, to be filled thereat. Upon the presenta-
tion of the petition, an order was made by the judge that
an alternative writ of mandamus issue, directed to the
defendant, commanding him to correct said notices by
naming the office of attorney-general of the state of Ore-
gon, to be filled at said general election, or show cause why
he has not done so. Upon the return day, the defendant
returned said writ with his answer annexed thereto, in
which he denied all the material allegations in said peti-

tion, and for a further and separate defense in substance alleged: That pursuant to the provisions of an act of the legislative assembly of the state of Oregon, entitled, "An act to create the office of attorney-general, provide the duties and fix the compensation," filed in the office of the secretary of state, February 21, 1891, it was made the duty of the governor of the state of Oregon to appoint a suitable person to be attorney-general of the state of Oregon; and that pursuant to the provisions of the act, his excellency, the governor, did on or about the twenty-first day of May, 1891, appoint Geo. E. Chamberlain such attorney-general, and that said appointee did thereupon qualify and enter upon the duties of such office, and that he is now the duly qualified incumbent; that under the provisions of said act, there is to be elected by the qualified electors of the state of Oregon at the general election to be held in June, 1894, and every fourth year thereafter, an attorney-general, who shall hold his office for the term of four years, and until his successor is elected and qualified, and that the term of the office of attorney-general shall commence on the same day as secretary of state, as now provided by law; that such appointee, the present incumbent, as defendant is informed and believes, is entitled to hold his said office until the general election in June, 1894; that for the reasons set out in his answer, and not otherwise, defendant has refused and still refuses to give notice of the election of an attorney-general, and he prays said writ be quashed, etc., and for his costs and disbursements.

The separate answer was demurred to; and the cause coming on for hearing, the court sustained the demurrer, and the defendant refusing to plead or answer further, it was ordered that a peremptory writ issue, directed to the defendant, commanding him to insert in the notices of election for each election precinct in said county that an attorney-general will be voted for and elected at the next

general election to be held in June, 1892.    From this order
this appeal has been taken.

The only question to be determined is, whether there
is an attorney-general to be elected at the next general
election in June, 1892; and the solution of this question
involves the construction of sections two and five of an
act of the legislative assembly, entitled, "An act to create
the office of attorney-general, provide the duties, and fix
the compensation." (Laws, 1891, 188.)  The second sec-
tion of said act reads as follows:  "There shall be elected
by the qualified voters of the state of Oregon, at the gen-
eral election held in June, 1894, and each fourth year
thereafter, an attorney-general, who shall hold his office
for the term of four years, and until his successor is elected
and qualified; and the term of office of the attorney-gen-
eral shall commence on the same day as secretary of state,
as now provided by law."  The provisions of this section
relate solely to the election of a person to a full or vacant
term of four years in the office of attorney-general; they
have no reference to a vacancy in a term, or a fractional
part of a term.  This becomes manifest when the different
provisions of the section are examined and their purpose
understood.  The section provides that an attorney-general
shall be elected in June, 1894, and every four years there-
after, who shall hold his office for four years, and that the
term of his office shall commence on the same day as sec-
retary of state.  Here, it will be noted, as regards a full or
vacant term to be filled by election, the time of his election,
the commencement of his term and its duration of four
years, is the same as is provided for governor, secretary of
state, and treasurer.  The evident purpose is to preserve
uniformity in the tenure of state offices.  As the next four-
year or full term of these officers will not commence until
the second Monday in January next after their election in
June, 1894, it was necessary, if the attorney-general's term
was to commence at the same time, and be of the same

XXII OR.—22.

duration, that he should be elected at the same time, namely, in June, 1894. Hence, the section provided that an attorney-general should be elected in June, 1894, for a term of four years, and that his term should commence on the same day as the term of the office of secretary of state. This construction makes operative every part of the section, without affecting the ordinary meaning of its language; and unless it is in conflict with some other section of the act from which it is clear that the law-making power intended otherwise, it must be regarded as the proper construction.

It is, however, in respect to the construction to be given to section 5 of the act that the controversy mainly arises. This section provides: "Upon the approval of this act, and at any time when a vacancy may by any cause occur in the office of attorney-general, the governor shall appoint a suitable person to be attorney-general, who shall hold the office until the next general election, when his successor shall be elected and shall qualify as provided for in this act." In our view, this section relates exclusively to a fractional term, or a vacancy in the term of the office of attorney-general. It is wholly directed to the filling of an hiatus in a term of such office, which may for any cause become vacant, by appointment, and by election, if a general election should intervene before such part of a term expired after the appointment. When the act became a law in February, 1891, the office created by it was vacant; but before there could be an election for a term of four years, as provided by section 2, which was to commence on the second Monday in January, 1895, the commencement of the secretary of state's term of office, there existed a fractional part of a term, extending between these periods, which this section contemplated should be filled in the manner provided therein. This vacancy existing upon the approval of the act creating the office, stands precisely upon the same footing as a vacancy occurring hereafter for

any cause, such as the death or resignation of an attorney-
general, elected for a full term. In either of these cases,
the section, as we construe it, is intended to apply to a
fractional or unexpired portion of a term.

It remains now to test the application of this construc-
tion of the purpose of section 5, and to ascertain if the result
it works out is consistent with that section, and not in con-
flict with section 2. Upon the approval of the act, the
governor was authorized by this section to appoint a suit-
able person to be attorney-general. There was then existing
a vacancy in the term of the office of attorney-general
extending over a period of more than three years. It was
the fractional part of a term; and after an appointment was
made to fill it, there intervenes a general election to be held
in June, 1892, before such term expires and a new term
begins. The section further provides that the suitable per-
son appointed by the governor shall hold the office until
the next general election, which, according to the plain
meaning of the words, would be the general election to be
held in June, 1892. The next general election, especially
in view of the fact that our constitution provides that
general elections shall be held on the first Monday in June
biennially (article 4, section 14,) after the appointment of
the present incumbent in 1891, is not the general election
held in June, 1894, provided by section 2, but it is the next ·
general election, which is to be held in June, 1892. Nor is
this result affected by the concluding words, "when his
successor shall be elected and shall qualify as provided for
in this act." When his successor shall be elected, refers to
the next general election, which precedes when, or at which
time, the successor to the person appointed by the governor
shall be elected, and shall qualify as provided for in this
act, which is by filing his certificate with his oath of office
endorsed thereon, etc., as prescribed by section 6 of the act.

To take the whole section and construe it as we under-
stand it with explanations, it would read in this wise:

"Upon the approval of this act, * * * the governor shall appoint a suitable person to be attorney-general, who shall hold the office until the next general election, when (at which time) his successor (the successor to the person appointed by the governor) shall be elected (at the next general election as provided in this section) and shall qualify as provided for in this act" (which is prescribed by section 6 of the act).

It was contended for the appellant that the words in section 5, "the next general election," when construed in connection with the words or language which follow, "when his successor shall be elected and qualified as provided for in this act," referred to the general election held in June, 1894, and not, as the words would seem to import, at the next general election, which is to be held in June, 1892. But the next general election, provided for in this act, when a vacancy exists in a part of a term of such office, is provided by section 5, and not by section 2, as that section relates to the filling of the office of attorney-general by election for a term of four years. It is to vacancies in an unexpired term to which section 5 applies; and if there is such a vacancy, the governor fills it until the next general election, when, if the term has not yet expired, the people fill it at the next general election for such unexpired portion of the term. When there can be no general election intervening between the appointment of the governor and the expiration of the term, the appointment of the governor then fills the unexpired term.

At the argument, by way of illustration, counsel was asked, if an attorney-general should die or resign in a few days after his election in June, 1894, leaving a vacancy in such office to be filled for such unexpired term, whether the person appointed by the governor would hold the office for the whole of such unexpired term or until the next general election, when his successor could be elected to fill the vacancy for the remaining part of the unexpired term.

His answer was consistent with his argument. He claimed that the appointee of the governor would hold for the remaining part of the term, notwithstanding the next general election would intervene before the expiration of such term. It seems to us to give the words the next general election, in section 5, when such general election intervenes before the general election to be held in June, 1894, the construction contended for, is to violate the plain meaning of the words, the next general election, and to disregard the purpose which the section was designed to accomplish. The golden rule of construction is to give effect to the ordinary meaning of words employed in a statute, unless it be clear that the law-making power intended otherwise. "Every word and clause, if possible, should have assigned to it a meaning, leaving no useless words." (Bishop on Written Law.) Statutes must rest on the words used, "nothing adding thereto, nothing diminishing." (*Leavenworth R. R. Co.* v. *U. S.* 92 U. S. 751.)

Another contention of counsel was that section 5 should have added or interpolated the words "for offices of a like class, or state officers," so as to make the section read as follows: * * * "Who shall hold the office until the next general election for offices of a like class, or for state officers, when his successor shall be elected and shall qualify as provided for in this act." But this is importing words into the statute not found there to sustain the construction contended for, and to give the statute and the section a particular meaning which they would not bear without them. As PATTERSON, J., said: "I see the necessity of not importing into statutes words which are not found there. Such a mode of interpretation only gives occasion to endless difficulty." (*Rex* v. *Barrell,* 12 Ad. & Ell. 468.)

As to the contention in respect to the punctuation of the statute, it is enough to say that the rule is, that courts will, in the construction of statutes, for the purpose of arriving at the real meaning and intention of the law makers, disre-

gard the punctuation or re-punctuate if need be, to render clear the true meaning of the statute. In *Cushing* v. *Warrick*, 9 Gray, 382, it was held that "punctuation was not to be regarded in constructing a statute." OAKLEY, J., says: "The courts will re-punctuate if necessary to render the meaning clear." (*Allen* v. *Russell*, 39 Ohio St. 336; *Gyger's Estate*, 65 Pa. St. 311; *Allbright* v. *Payne*, 43 Ohio St. 8.)

And, finally, it was claimed that the original bill, as introduced, provided for the first election of attorney-general, "at the first election held after the approval of this act," but that it was so amended as to provide that the election should take place in June, 1894, as now provided by section 2. This it is claimed shows that it was the intention of the legislature that no election of attorney-general should be held until June, 1894, and that the provision in section 5 as to the next general election simply means the general election in June, 1894, until which time the appointee of the governor will hold his office. To our minds, the reason for the change indicates a wholly different purpose. To have made the election of' attorney-general to take place "at the first general election held after the approval of the act," would have destroyed the uniformity in the term of this office with other state officers, which was accomplished by making the election for a full term take place in June, 1894. To make the election take place at the first general election after the approval of the act, would have made the election for the term of four years take place in June, 1892, and in such case it would have been impossible to make the term of the office of attorney-general commence on the same day as the term of the office of secretary of state, and brought about the uniformity which is effected by making the election take place in June, 1894. That counsel regarded the object in amending section 2, was to preserve uniformity in state offices, is manifest by the words which he sought to interpolate into section 5. On the other hand, the construction we have

given to sections 2 and 5, needs no artificial aid or words interpolated to give these sections any other meaning, or any particular meaning, than the words naturally bear. This construction aims to give to every word its ordinary signification, and to every clause a meaning and effect. Under it, as provided by section 2, there will be an attorney-general elected in June, 1894, who will hold his office for a full term of four years, and whose term will commence with that of the secretary of state, thus preserving uniformity in the tenure of state offices. Under it, as section 5 provides, when a vacancy occurs in a term, or there is an unexpired term to fill, the governor will appoint a suitable person, who will hold his office until the next general election, when, if such term is still unexpired, the power reverting to the people, they will fill it by electing his successor for the remaining part of such term. From these considerations, it results that the present incumbent, appointed by the governor, holds his office until the next general election, which is to be held in June, 1892, when his successor, whoever he shall be, will be elected; and when such successor's election shall be officially known and declared, and he shall qualify as prescribed by section 6, the title of the office of attorney-general will be transferred to him, and he will be the attorney-general of the state of Oregon for the balance of such term, or until a new term begins.

There was no error, and the judgment must be affirmed.

STRAHAN, C. J., dissenting.—This proceeding calls for a construction of sections 2 and 5 of the act creating the office of attorney-general, because if the attorney-general is elective at the ensuing June election, notice thereof should be given in like manner as notices are given for the election of other state officers, and it is made the duty of the county clerk to give such notice. If the office of attorney-general is to be filled at the June election, to be

held in 1892, the judgment of the court below should be affirmed; but if such office is not to be filled by an election until 1894, then the judgment appealed from should be reversed and the writ dismissed.

It is a well settled rule that in the construction of a statute, the intention of the legislature is to be ascertained by considering the entire statute (Suth. Stat. Const. § 239; *Smith* v. *Randall*, 6 Cal. 47; S. C. 65 Am. Dec. 475); and that different sections of the same statute must, if possible, be so construed as to be consistent with each other (*Merrill* v. *Harris*, 57 Am. Dec. 359; S. C. 26 N. H. 142; *Gates* v. *Salmon*, 95 Am. Dec. 139; S. C. 35 Cal. 576; Suth. Stat. Const. §§ 240, 241; *City of San Diego* v. *Granniss*, 77 Cal. 511); and so as to effect legislative intention. (*Lindley* v. *Cross*, 99 Am. Dec. 610; S. C. 31 Ind. 106.)

It is also a well settled rule of law that "elections cannot be held and offices acquired at the mere option of the office seeker. In order, therefore, to the holding of a valid election, authority so to hold it must be found conferred by the people, either directly through the constitution which they themselves ordained, or indirectly through the enactments of their legal representatives, the legislature. Without such authority, no election, except it be one held with the unanimous consent of all persons entitled to participate, can be of any legal importance" (Mechem on Pub. Offices, § 170; *State ex rel.* v. *Simon*, 20 Or. 365); and enactments declaring the time at which the election shall be held are deemed to be matters of substance, and must be substantially observed or the election will be void. (Mechem on Pub. Offices, § 178.)

The office of attorney-general is not an office specially provided for in the constitution, but one created by the legislature; and the legislature had the power to determine when the first election should be held for the purpose of filling that office by election; but it could not create any

office the tenure of which shall be longer that four years. (Article 15, section 2, Constitution.)

Section 2 of said act provides that "there shall be elected by the qualified voters of the state of Oregon, at the general election to be held in June, 1894, and each fourth year thereafter, an attorney-general"; and there is nowhere in the statute any provision for the election of an attorney-general prior to that time, unless it can be held that the fifth section provides for an election in 1892; and whether or not this section does so provide, must be determined by so construing both sections that they will be consistent with each other. That portion of section 5 which calls for a construction in this proceeding is substantially as follows: "Upon the approval of this act, * * * the governor shall appoint a suitable person to be attorney-general, who shall hold his office until the next general election, when his successor shall be elected and qualified as provided in this act." It is true, the constitution provides that general elections shall be held on the first Monday in June biennially, (article 4, section 14,) but it does not necessarily follow that the words "next general election, when his successor shall be elected and qualified as provided in this act," mean the first general election after the passage of the act; and in this particular instance we think the "next general election" referred to is the general election to be held in June, 1894, as it is the only general election referred to in the act, and is the only one provided for therein. We are the more fully satisfied that this is the proper construction of these two sections, for the following reasons: It is provided in section 2 of said act that "the term of the office of attorney-general shall commence on the same day as secretary of state, as now provided by law"; and this court takes judicial notice that the term of office of secretary of state next succeeding the creation of the office of attorney-general will not commence until the second Monday in January, 1895. At that time the attorney-general

to be elected under this act must qualify. If the attorney-general should be elected in June, 1892, he could not qualify until that time; but that statute expressly provides that an attorney-general must be elected in June, 1894, and the officer elected at that time must qualify on the same date. There would then be two persons each claiming the same office by election and both required to qualify on the same day.

The original bill as introduced provided for the first election of attorney-general at the first election held after the approval of this act, but it was so amended as to provide that the election should take place in June, 1894. (Senate Journal, 1891, 587.) This shows conclusively that it was the intention of the legislature that no election for attorney-general should be held until June, 1894, and that the provision in section 5 simply means that the appointee of the governor should hold the office until the next general election, at which his successor should be elected as provided in the act, to wit, at the general election in June, 1894.

It is provided in said act that the attorney-general, when elected, shall hold his office for the term of four years, and until his successor is elected and qualified. There is no provision for the election of an attorney-general for a shorter time than four years; and if an attorney-general should be elected in June, 1892, his term would certainly be for four years and until his successor is elected and qualified. (*State ex rel.* v. *Johns*, 3 Or. 533.) In that case it was held that the term of an office attaches to the person of the individual elected to fill the same.

It is claimed by the respondent that the court cannot look to the senate journal for aid in construing the act, but no authority is cited to sustain that contention. It is a well-known fact that the debates and journals of constitutional conventions, as well as legislative bodies, are constantly consulted and referred to for the purpose of aiding courts called

upon to expound their acts and construe their language in arriving at a conclusion as to the true meaning of the language. In construing statutes, the primary object of the court should be to effectuate the intent of the law-maker, and for such purpose it is proper for a court to look into the circumstances at the time and the necessity which called for the enactment of a particular statute. (*Keith* v. *Quinney,* 1 Or. 364.) In *State ex rel.* v. *Simon, supra,* this court, per BEAN, J., said: "The rule is unquestioned that in the construction of a statute, the cardinal point is to ascertain the intention of the legislature; but it is just as well settled that this intention must be ascertained from the words used in connection with the surrounding circumstances." (*Walter A Wood Co.* v. *Caldwell,* 54 Ind. 270; 23 Am. Rep. 641; *Stout* v. *Board of Comrs.* 107 Ind. 343; 7 Rights, Rem. & Pr. § 3773; *New England Car Co.* v. *B. & O. R. R. Co.* 69 Am. Dec. 181; S. C. 11 Md. 81.)

Now, if the intention of the legislature can be ascertained in any other manner than from the language used, we know of no more certain guide or better authority for that purpose than the record made by such legislature while such statute was under consideration; and the proper phraseology to be employed to effectuate the legislative intent, was the very matter brought to the attention of the legislature. We think, therefore, that in construing this statute, we are entitled to look to the journals of the senate for the purpose of aiding us in determining the legislative intent in all cases where the intent is not obvious from the language employed.

It was claimed by the respondent that under section 16, article 5, of the constitution, the governor could not appoint any one to fill a vacancy in an office who could hold such office beyond the next general election which might be held after such officer was appointed; but if the construction which we have placed upon this statute be correct, the reasoning of this court in *State ex rel.* v. *Johns, supra,* does

not apply, for the reason it is there said, "if the people have surrendered that power (the power to elect) it should be by express and unequivocal words." In this case the legislature, representing the people, created the office of attorney-general, provided when the first election should be held under the act, and thereby waived the right to elect at any time prior to June, 1894. The provision of the constitution referred to does not limit the right of the governor to appoint to an office until the next succeeding general election, but until the successor of such appointee shall be elected and qualified; and if no election is provided for in this act prior to June, 1894, none can be held, and the present incumbent would hold the office until his successor shall be elected at that time and duly qualified.

We are therefore of the opinion that no election for attorney-general can be held at the ensuing June election, and that the judgment appealed from must be reversed and the writ dismissed.