L. B. JOBB, APPELLANT, *v.* THE COUNTY OF MEAGHER, RESPONDENT.

[Submitted Jan. 17, 1898. Decided Jan. 31, 1898.]

*Statutes — Implied Repeals — Codes — Interpretation of — Sheriffs, Appointment of Deputies—Title of Act.*

1. STATUTES—*Implied Repeals.*—Repeal of a statute by implication is not favored; and it will not be presumed that by a subsequent act the legislature intended to repeal a former law, unless the repugnancy between the two acts is irreconcilable, or the latter revises the whole subject matter of the former.

2. CODES—*Interpretation of.*—The provisions of the four codes as originally adopted are amended by the Acts of the Third and Fourth Session of the Legislature, so

far as they conflict with the same; and the Acts of the Third Session are amended by the Acts of the Fourth Session so far as they are in conflict. (Sections 5181-5184 and 5186, Code, construed.)

3. SHERIFFS—*Appointment of Deputies.*—The Board of County Commissioners has the power to determine, within the maximum limits prescribed by law, the number and compensation of deputies allowed by the sheriff. (The Act of March 12, 1885, Laws of 1885, p. 62, as amended by the Acts of March 2, and March 9, 1893, and by Sections 4594, 4596, 4597, 4602 and 4603, construed.)

4. TITLE OF ACT.—Act March 9, 1893, amending Act 1891, entitled "An Act concerning compensation of county * * * officers," and providing for the payment of sheriffs by salary, and that the commissioners shall fix the number of deputy sheriffs, is not repugnant to Const. Art. 5, § 23, providing that a bill shall not embrace more than one subject, which must be clearly expressed in the title.

*Appeal from District Court, Meagher County. F. K. Armstrong, Judge.*

ACTION by L. B. Jobb against the County of Meagher. Judgment for defendant, and plaintiff appeals. Affirmed.

Statement of the case by the justice delivering the opinion.

This action was brought to recover $225, claimed to be due the plaintiff from defendant for services rendered by him as deputy sheriff and jailer of Meagher county, Montana, for the three months immediately preceding September 1, 1897, the facts being these :

Plaintiff was on January 4, 1897, appointed by the sheriff of Meagher county to the office of deputy sheriff. · He qualified and performed the duties of such officer, and those of jailer of the county, until the September following. Meagher county was a county of the seventh class, and plaintiff was the only deputy sheriff aside from the undersheriff of that county. At the June, 1897, meeting, the board of county commissioners passed a resolution refusing to thereafter allow the sheriff any deputy other than the undersheriff, of which resolution the sheriff and the plaintiff were immediately notified. The board disallowed plaintiff's claim, as not a proper charge against the county. From January 4, 1897, to the time of the passage of the resolution, plaintiff received from defendant $75 each month for his services. No order was ever made by the board fixing the amount of his compensa-

tion.    It was agreed that, if entitled to recover, he should receive $225.    The District Court rendered judgment dismissing the action, from which plaintiff appeals.

*Smith & Gormley* and *H. S. Hepner*, for Appellant.

*C. B. Nolan*, Attorney General, for Respondent.

PIGOTT, J.—By this appeal the question is presented whether the board of county commissioners possesses the power to determine, within the maximum limits prescribed by law, the number and compensation of deputies allowed the sheriff.    If the board has such power, the judgment of the trial court was right.    We shall briefly review the legislation upon the subject.

The First Legislative Assembly of the Territory of Montana, by Section 4 of Article 4 of an act approved February 9, 1865, entitled ''An act relating to counties and county officers,'' provided :    ''Each sheriff may appoint such and so many deputies as he may think proper, for whose official acts, and those of his undersheriff, he shall be responsible; and may revoke such appointments at his pleasure; and persons may also be deputized by such sheriff or undersheriff, in writing, to do particular acts; and the sheriff and his sureties shall be responsible on his official bond, for the default or misconduct of his undersheriff and deputies.''    (Bannack's St. p. 510.)

This section was continued in force by the succeeding legislatures until the act of March 12, 1885 (Laws 1885, p. 62,) went into effect.    From the act of February 9, 1865, to that of March 12, 1885, the sheriff was compensated by fees, and not by salary, and his deputies received nothing from the county.    The act of March 6, 1891, was entitled ''An act concerning compensation of county, district and township officers,'' and provided, among other things, that all fees, costs, and other perquisites, except mileage and board of prisoners, of the sheriff, should be received by him for the sole use of the county; and, in lieu of the fees to which he had been theretofore entitled, he was allowed a salary, the salary

being fixed by the class in which he belonged.   There were three classes, consisting, respectively, of sheriffs of counties whose assessed valuation was $8,000,000 or over, of sheriffs of counties whose assessed valuation was $4,000,000 and less than $8,000,000, and of sheriffs of counties whose assessed valuation was less than $4,000,000.   Section 4 provided and limited the maximum annual compensation which should be allowed to any deputy sheriff, and declared :   "The number of deputies and their compensation allowed to county officers within the maximum limits named in this act shall be determined by the board of county commissioners."   All acts inconsistent with the provisions of that act were expressly repealed.   On March 2, 1893, Sections 3 and 4 of the act of 1891 were amended in particulars not material to this case, but the power conferred upon the board of commissioners was again expressed; and upon March 9, 1893, Section 4 of the act of 1891 was again amended, in a matter not pertinent to the subject before us, the authority of the board of commissioners to determine the number of deputies and their compensation being again declared.

The Political Code was acted upon by the legislature as it had been reported by the Code Commission in 1892.   It was passed in the form reported, and as a whole, and was approved February 25, 1895.   Among its sections were the following :

"Section 3133.   The county officers are entitled to receive as annual compensation, or salary, for services, according to the following classification, to-wit :   First-class * * * Sheriff, four thousand dollars.   * * * Second-class. * * * Sheriff, three thousand dollars.   * * * Third-class. * * * Sheriff, twenty-seven hundred dollars.   * * *"

"Section 3136.   If at any time in the judgment of the board of county commissioners, the salary of any county officer provided in this chapter is inadequate for the services required of him, and he is unable to perform the duties of the office, the board may allow such officer a deputy or such number of deputies as in its judgment may be required to do the business and perform the duties of the office, in connection

with the principal, for such time as may be necessary, and at a salary not exceeding the amount stated in the next preceding section, subject to the qualifications prescribed in the following sections.''

''Section 3137.   *   *   *   The sheriff in each of the counties must appoint one undersheriff as provided in Section 2982 of this code, and such appointment may be made without the consent of the board of county commissioners.   The whole number of deputies allowed the sheriff in addition to the undersheriff, must not exceed in counties of the first-class where there are more than one judge of the District Court, four, otherwise three; in the counties of the second-class not to exceed two, and in counties of the third class not to exceed one. The sheriff, undersheriff or one of the deputies must act as jailer.''

''Section 3139.   The number of deputies allowed to county officers and their compensation must be determined by the board of county commissioners, within the maximum limits prescribed in this chapter, and no deputy must be allowed to a county officer unless the actual necessities of the office require it.   The salaries must be allowed and paid quarterly upon the order of the board of county commissioners and paid out of the contingent fund.''

In the Political Code, as officially published, are the following sections, which are also original code provisions, the numbering having been changed in compilation :

''Section 991.   All assistants, deputies, and other subordinate officers, whose appointments are not otherwise provided for, must be appointed by the officer or body to whom they are respectively subordinate.''

''Section 992.   When the number of such deputies or subordinate officers is not fixed by law, it is limited only by the discretion of the appointing power.''

''Section 4318.   Every county and township officer, except county commissioner and justice of the peace, may appoint as many deputies as may be necessary for the faithful and prompt discharge of the duties of his office, but no compensation or

salary must be allowed any deputy except as provided in this code.''

''Section 4319.   The appointment of deputies, clerks and subordinate officers of counties, districts and townships must be made in writing and filed in the office of the county clerk.''

''Section 4382.   The sheriff must, as soon as may be after he enters upon the duties of his office, appoint some person undersheriff to hold during the pleasure of the sheriff.   Such undersheriff has the same powers and duties as a deputy sheriff.''

The act of March 13, 1895 (Sections 5181, 5184, and 5186), provides that all acts of the Third and Fourth sessions of the assembly (1891 and 1893) shall be and remain in full force and effect in like manner as if enacted after the adoption of the code; and that if any acts or parts of acts enumerated are in conflict with, or are inconsistent with any of the provisions of the code, the acts or parts of acts so enumerated (the acts of March 2 and 9, 1893, being among them) are to be considered and construed as amendments to the code, ''it being intended hereby that all of the acts or parts of acts herein enumerated shall be the law of the State of Montana, upon the respective subjects, so far as they are inconsistent with the said codes, or any of them, except as herein provided;'' and declares the acts of March 2 and 9, 1893, to be in full force and effect, except as in the code otherwise provided.   The act of March 13, 1895, further declares :

''Section 5185.   That if any of the acts or parts of acts herein enumerated (those of March 2 and 9, 1893, being among them) are in conflict with, or are inconsistent with, any act or acts passed by the Fourth Legislative Assembly of the State of Montana, the acts or parts of acts passed by the Fourth Legislative Assembly shall be considered and construed as repealing such acts or parts of acts herein enumerated.''

The act of March 18, 1895 (Section 4328), classified the counties according to assessed valuation, there being eight classes.

Upon March 19, 1895, "An act to amend Sections 3133, 3135, 3137, 3138 and 3139, and to repeal Section 3136, of the Political Code," was approved, and appears in the code as Sections 4594, 4596, 4597, 4602, and 4603. Section 4594 fixes the salary of the sheriff according to the class in which he belongs. Section 4596 provides the maximum annual compensation allowed to deputies of officers of the various classes, the deputy sheriff in counties of the seventh class not to receive more than $1,000. Sections 4597 and 4603 are as follows :

"Section 4597. * * * The whole number of deputies allowed the sheriff is one undersheriff, and in addition not to exceed the following number of deputies : In counties of the first and second classes, six; in counties of the third and fourth classes, four; in counties of the fifth and sixth classes, three; in counties of the seventh and eighth classes, one. The sheriff, undersheriff, or one of the deputies, must act as jailer; provided, that the board of county commissioners may allow jailers when in their judgment the same are necessary, and when so allowed, jailers must not be paid to exceed twelve hundred dollars per annum."

"Section 4603. The number of deputies allowed to county officers and their compensation must not exceed the maximum limits prescribed in this chapter. The officers entitled to deputies must within thirty days after this code takes effect file a certificate of appointment of the deputies in their office with the county clerk. The salaries must be allowed and paid monthly upon the order of the board of county commissioners and paid out of the contingent fund."

Counsel for appellant make an able argument, contending that the act of March 19, 1895, which amended Sections 3133, 3135, 3137, 3138, and 3139, and repealed Section 3136, of the code as originally adopted, and now appearing as Sections 4594, 4596, 4597, 4602, and 4603, conflicts and is inconsistent with the act of March 9, 1893, and operates as a repeal thereof; that even if there be not a conflict between the act of March 19, 1895, and that of March 9, 1893, the

act of later date revised the whole subject-matter of the other, and ought to be taken as a repeal.

An examination of the course of legislation with reference to the compensation of the sheriff and his deputies impels us to the conclusion that the people entertained no objection to the appointment by the sheriff of as many deputies as he desired, so long as the result of the exercise of such power in no wise entailed expense to the people; in other words, the territory, and afterwards the state granted permission to that officer to appoint and employ, and himself pay, such number of deputies as he might wish. From 1865 until 1885 neither the territory or state, nor any county within it, could be charged with the salary or compensation of a deputy sheriff. During that time the deputy looked to his principal, and the rate and amount of wages or compensation for his services, as well as the time and manner of paying it, were matters of private agreement between the parties, and in no wise concerned the public. Whether the sheriff had one deputy, or fifty, or any other number of deputies, was, from a financial point of view, immaterial to the public. But the act of March 12, 1885, entitled "An act limiting the compensation of certain officers herein named" (Laws 1885, p. 62), worked a radical change. It repealed all former statutes by which the sheriff had been entitled to fees, and provided salaries for him and his subordinate officers, to be paid by the county. If there ever existed any statute prior thereto permitting salaries of deputy sheriffs to be a public charge, we have not been able to discover it. It repealed the act of February 9, 1865, in force for 20 years, authorizing the sheriff to appoint as many deputies as he might think proper. It conferred upon the board of county commissioners the exclusive power of determining, within the bounds fixed by the act, the number and compensation of deputies. The people were now concerned with the matter of such appointments. Their interests were involved, for the burden of paying deputies had been cast upon the counties. Be the reason what it may, the assembly saw fit to take from the sheriff the power to appoint

as many deputies as to him seemed proper, and to lodge the power of determining their number within the limits permitted by law with the governing body of the county. The acts of 1891 and 1893 continued that power in the board of commissioners.

So the law was on February 25, 1895, when the. Political Code in its original form was approved. Referring to Sections 3136 to 3139 of that Code, as originally adopted, it is clear that the board of county commissioners was still clothed with the power of determining the number of deputies and their compensation. Section 4318 of the code, as finally adopted, providing that the sheriff might appoint as many deputies as were necessary for the discharge of the duties of his office, but that no compensation or salary must be allowed any deputy except as in the code provided, was inconsistent with the act of 1893, conferring upon the board authority to determine the number and compensation of deputies; and, by virtue of Sections 5181, 5184 and 5186 (Act March 13, 1895), the act of 1893 controlled and became law so far as in conflict with the code provisions. It amended Section 4318, which was an original code provision, so as to conform to its provisions.

Up to this point, certainly, doubt will not exist in respect of the want of power in the sheriff to appoint as many deputies as he may deem proper.

We have now reached the act of March 19, 1895, amending Sections 3133, 3135, 3137 and 3139, and repealing Section 3136. If the act of March 9, 1893, is in conflict with that of March 19, 1895, the latter act repeals so much of the former as conflicts. (Section 5185, *supra.*) By the provisions of the act of March 19, 1895, sheriffs, undersheriffs and deputies are entitled to certain salaries, fixed by the class of county in which they respectively serve. The number of classes is eight. Under the act of 1893 there were three classes, and the salaries were somewhat different. There being a conflict, the act of 1895 repealed the act of 1893 in these particulars. It further provides that the whole number of deputies allowed

the sheriff, in addition to the undersheriff, is not to exceed one in counties of the seventh class, and that the board may allow jailers when, in its judgment, the same are necessary; that the number of deputies and their compensation must not exceed the maximum limits prescribed; that, within 30 days after the code takes effect, the sheriff entitled to deputies must file a certificate of appointment in the office of the County Clerk; and that the salaries must be allowed and paid monthly upon order of the board.    We are clearly of the opinion that there is nothing in this act of March, 1895, so inconsistent with the act of March 9, 1893, as to repeal that part of said act conferring authority on the board to determine the number of deputies.    "Repeals by implication are not favored, and there is certainly much room for both of these statutes to operate without conflict." (*Brown* v. *McCormick,* 28 Mich. 215.) If it be possible to reconcile two acts, there will be no repeal by implication. (*McCool* v. *Smith,* 1 Black, 459.)

Mr. Sutherland, in Section 152 of his valuable treatise on Statutory Construction, declares the rule: "It is not enough to justify the inference of repeal that the later law is different. It must be contrary to the prior law. It is not sufficient that the subsequent statute covers some or even all the cases provided for by the former, for it may be merely affirmative, accumulative or auxiliary. There must be positive repugnancy, and even then the old law is repealed by implication only to the extent of the repugnancy. If, by fair and reasonable interpretation, acts which are seemingly incompatible or contradictory may be enforced and made to operate in harmony and without absurdity, both will be upheld, and the later one will not be regarded as repealing the others by construction or intendment. As laws are presumed to be passed with deliberation and with a full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable." (See, also, *Congdon* v. *Railway Co.,* 17 Mont. 481,

43 Pac. 629; *State* v. *Rotwitt,* 17 Mont. 41, 41 Pac. 1004; *Crosby* v. *Patch,* 18 Cal. 439, *Gaston* v. *Merriam,* 33 Minn. 285, 22 N. W. 614; *Kilgore* v. *Commonwealth,* 94 Pa. St. 495.)

Appellant asks why, if the act of 1893 was intended to remain law, the act of March 19, 1895, repealed Section 3136 and amended Section 3139. The answer seems apparent. Section 3136 differed somewhat from either section 3139 or the act of 1893, by authorizing the board of commissioners to allow deputies when two conditions concurred, namely, inadequacy of salary of the principal officer for the services required of him, and his inability to perform the duties of the office. The purpose of the legislature in repealing Section 3136 was to prune the code of this section, which was not in harmony with that portion of the act of 1893 upon the subject; and, in order to disencumber the code of a redundancy or repetition, Section 3139, the subject-matter of which was substantially embraced in the act of 1893, was amended by omitting those provisions already incorporated; and, as we think, a reading of Section 4603, which is Section 3136 as amended, discloses that intent.

The direction contained in section 4603, requiring officers entitled to deputies to file a certificate of their appointment within 30 days after the taking effect of the code, is cited as conclusive proof of the intent of the legislature to permit the sheriff to appoint such number of deputies as he may think proper. But to us it seems that the section is not susceptible of such inference. There is nothing therein which deprives the board of the right conferred by the law of 1893 to fix, to reduce, and, indeed, to order an increase of, the number of deputies. The validity or efficacy of the appointments depended upon the condition subsequent, to wit, the approval of the board, unless the determination of the number to be allowed preceded the appointments or was simultaneous with it.

Argument is also advanced that by the word "must," used in the last paragraph of Section 4603, the board is shorn of any discretion it might otherwise have in making payment of

the salary of a deputy, providing the officer has kept within
the maximum limits in making the appointments.   Not so.
The last paragraph of Section 4 of the act of 1893 is to the
same effect.   Reading the various provisions of the law as a
whole, the intent of the provision is manifest.   Its effect is to
require the salaries of such deputies as the board has allowed
to be paid monthly.

Much argument has been devoted to the meaning of the
word ''allowed,'' as used in Sections 4597 and 4603, appel-
lant contending that it is employed in the sense of a power
granted to the sheriff to exercise his uncontrolled discretion
in making appointments within the maximum limits.   We
think otherwise.   In the acts of 1891 and 1893 the same word
is used to express the exercise of authority or discretion by
the board of commissioners, or to confide to the board the de-
termination of the number and compensation of deputies within
the maximum limits permitted by law; and from this as well
as for other reasons apparent upon consideration of the legis-
lation as a whole, we believe it was intended to receive a like
interpretation when found in the later act.

The last paragraph of Section 4602 of the Political Code
(Act March 19, 1895), reads:   ''The whole number of depu-
ties allowed the County Attorney in counties of the first and
second classes must not exceed one chief deputy and one
deputy; and in all other counties such deputies as may be al-
lowed by the board of county commissioners, not to exceed
one chief deputy and one deputy.''   If (argues appellant) the
board has power to determine the number of deputies the
various officers shall have, why the necessity of the latter
clause?   We are not required to expound this statute.   It is
sufficient to say that the acts of March, 1891 and 1893, make
no provision for Deputy County Attorneys.

But it is urged that, even though there be no conflict be-
tween the act of 1893 and that of 1895, nevertheless the last
statute revised the whole subject-matter of the former, and
will therefore be taken as a repeal.   Such is not the case.   We
adopt the language of Mr. Justice Field in *Patterson* v. *Ta-*

*tum.* ''But the implication (of repeal) cannot arise when the revisory statute itself prescribes its operation upon the previous act. When that is done, no other effect can be given to the revisory act. And such was the case in the revisory act of 1846. It repeals such provisions of the original act as were inconsistent with the new act; none other.'' (3 Sawy. 164, 18 Fed. Cas. 1331.) The whole subject-matter of the act of 1893 was not revised by the subsequent statute. The latter did not treat of the supervisory power of the board in respect of appointments, but left that subject to be covered by the former act. The last statute expressly limited its operation as a repeal to such portions of the earlier act as conflicted therewith. Any parts of the former statute not inconsistent with the latter were not repealed. (*Lewis* v. *Stout*, 22 Wis. 225.) The opinion in *Proctor* v. *Cascade Co.*, 20 Mont. 315, 50 Pac. 1017, in no wise announces a rule not in harmony with the one here laid down. The later act cannot be intended as a revision of the laws relating to the subjects within its purview, unless it be a complete substitute for the previous statute, and contains the only rule or all the legislation which is intended to have effect with regard to those subjects. (Sutherland on Statutory Construction, § 154.)

It is thought not foreign to this case to observe that the provisions of the Political Code of California relating to sheriffs and their compensation seem, in a measure, to have been the model upon which our code provisions were fashioned. Many of the sections are identical. For example, Section 4112 of the California Code is similar to section 4318 of the Montana code, *supra*; but in California all deputies must be paid by their principals out of their salaries (Section 164, Act March 14, 1885, ''County Government Act''), thus rendering it a matter of no consequence to the county whether or not the officer has deputies in excess of his needs.

The final attack consists of a suggestion that the act of 1891, as amended in 1893, is void as to that part which confers upon the board of commissioners the power of determining the number of deputies, for the reason that it embraces

more than one subject, and for further reason that such subject is not clearly expressed in its title, and is therefore within the inhibition of Section 23 of Article 5 of the Constitution of the state. The objects of requiring the subject to be expressed in the title are stated by this court in *State* v. *Mitchell*, 17 Mont. 67, 42 Pac. 100. The purpose requiring singleness of subject is ''to prevent the practice, which was common in all legislative bodies where no such restriction existed, of embracing in the same bill incongruous matters, having no relation to each other or to the subject specified in the title, by which measures were often adopted without attracting attention.'' (Sutherland on Statutory Construction § 78.) ''Sound policy and legislative convenience dictate a liberal construction of the title and subject-matter of statutes to maintain their validity. Infraction of this constitutional clause must be plain and obvious to be recognized as fatal.'' (*Id.* § 92;, *Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. 821.) Here the subject—the compensation of county, district, and township officers—is single; and ''all matters which are naturally and reasonably connected with it, and all measures which will or may facilitate the accomplishment of the purpose so stated, are properly included in the act, and are germane to its title.    *    *    * Whatever the scope of the subject, it comprehends, not only its constituent parts, but its general incidents, *   *   * · and everything contributing to the purpose the title expresses or necesarily implies.'' (Sutherland on St. Const. § 92.) The subject of the statute under consideration is clearly expressed in the title; and the grant of power to the board to fix the number and compensation of deputies, who act only by virtue of their principals and in their names, and through whom the principal officers may act, contributes to the purpose, and is but incidental to the subject, expressed by the title. The act is free from either of the objections made.

The judgment of the District Court will be affirmed, and it is so ordered.

*Affirmed.*

Pemberton, C. J., concurs. Hunt, J., not sitting.