# HOME BUILDING AND LOAN ASSOCIATION OF HELENA,. PLAINTIFF, *v.* C. B. NOLAN, ATTORNEY GENERAL.

[Submitted May 6, 1898. Decided June 20, 1898.]

*Building and Loan Associations— Statutes— Construction— Repeal— Constitution.*

1. Sections 770 to 790 Civil Code, adopted in 1895, provided for the organization of building and loan associations. Sections 800 to 845 provided for the organization, government and regulation of such associations whose real estate loans were not confined to lands within the county in which was located the principal office of the company. The Act of March 4, 1897, is entitled: "An Act to provide for the organization, regulation and inspection of building and loan associations and to repeal Sections 770 to 845 of the Civil Code." Section 1 of the act provides for the organization of such companies. Section 2 authorizes existing building associations to avail themselves of the new law, by complying with certain conditions mentioned in that section. Section 28 repeals Sections 770 to 845 of the Civil Code. Section 25 declares that it shall be unlawful for any building and loan association to do business in this state

without having first complied with the provisions of the act—and the section contains the following proviso: "That except as to taxation, this act shall not affect any such association, heretofore organized under the laws of the state of Montana, unless it elects to come under its provisions." *Held,* first, that the act of March 4, 1897, except as to taxation, affects only such corporations as are organized thereunder, and those theretofore existing and which avail themselves of the right to come within its provisions—and that corporations theretofore existing and not electing to come within the provisions of the act, are authorized to continue under the old law, and are not affected by the provisions of the act of 1897, except those referring to taxation.

2.  In construing a statute, effect must, if possible, be given to all its language; the intention of the legislature is to be ascertained; and where a general and particular provision are inconsistent, the latter will control.

3.  The title of the act of March 4, 1897, is as follows: "An act to provide for the organization, regulation, etc., of building associations." No reference was made in the title to existing corporations; but the act provided that such corporations should not be affected by the law, unless they elected to come within its provisions. *Held,* that the act as to this clause was not in conflict with Sec. 23, Art. V, of the Constitution, which provides that "no bill shall——be passed containing more than one subject which shall be clearly expressed in its title."

4.  *Held,* further, that the clause of the act providing that corporations theretofore existing should not be affected by its terms unless they so elected is not in conflict with Section 26, Art. V, of the Constitution, which prohibits the legislative assembly from passing (among others) any special or local laws chartering loan and trust companies.

Original proceeding in the Supreme Court by the Home Building & Loan Association of Helena against C. B. Nolan, attorney general, for a peremptory writ of prohibition. Writ granted.

*F. E. Stranahan,* for Plaintiff.

*C. B. Nolan, Attorney General, in pro. per.*

PIGOTT, J.    The object of this proceeding is to obtain a peremptory writ of prohibition commanding the attorney general to desist from carrying into execution his declared intention to institute an action for the purpose of dissolving plaintiff.    An alternative writ was issued, and is attacked by a motion to quash, upon the ground that the affidavit supporting it is insufficient in substance.

It appears from the affidavit that the plaintiff is a building and loan association organized as a corporation on November 18, 1895, under the laws of Montana then in force; that plaintiff "has not elected to come under the laws of 1897 relating to building and loan associations, nor has it it held any meeting of its stockholders to that end, as provided in section 2 of the act of 1897, * * * but that said plaintiff has

been at all times since the said incorporation, and now is, acting and doing its said business under the laws of the state of Montana under which it was incorporated, save and except as to taxation, as is provided in section 25 of said act of 1897; that the defendant threatens and is about to institute proceedings to dissolve plaintiff, and to have a receiver appointed to take charge of its affairs, and to procure the arrest of and to prosecute its officers for doing its business without having elected to come under the said laws of 1897," and that the sole reason therefor is the opinion of the defendant that the act of 1897 is the only law now in force governing building and loan associations; that, because of certain facts stated, irreparable injury would result to the plaintiff if the defendant is not prohibited from initiating the proceedings which he threatens to take under authority of section 18 of the act of March 4, 1897.

Following is so much of the section as is pertinent: "Should the state examiner, upon examination, find any domestic association conducting its business in whole or in part contrary to law, or failing to comply with the law, he shall so notify the board of directors of such association in writing; and if after thirty days, such illegal practices or failure continues, he shall communicate the fact to the attorney general, who shall cause proceedings to be instituted in the proper court to revoke the charter of such association."

1.   The first question is, did the legislature intend by the act of March 4, 1897, to absolutely and unconditionally repeal Sections 770–845 of the Civil Code, so that the act of 1897 would be the only law in force as to building and loan associations?

Plaintiff is a domestic corporation, organized November 18, 1895.   At that time two systems of law were in force providing for the organization of building and loan associations and regulating the conduct of their business.   Article 1, Title 6, Part 4 of the Civil Code, containing Sections 770 to 790, was part of the original code, and provided, in terms, for the method of creating all such corporations; while Article

2, consisting of Sections 800 to 845, was an act of March 19, 1895, and provided for the organization, government, and regulation of associations whose real estate loans were not confined wholly to lands situate in the county of its principal office, and made provision, also, for the government and regulation of foreign corporations doing business in this state. It would thus seem, although the fact is unimportant in the case at bar, that, by virtue of Section 5184 of the Political Code, Article 2 restricted the operation of Article 1 to building and loan associations lending money on real estate lying in the county only in which its principal office is located. (See *Jobb* v. *Meagher County*, 20 Mont. 424, 51 Pac. 1034.) Differences of a substantial kind exist between the provisions of the two articles. It does not appear whether plaintiff was created under Article 1 or Article 2, nor is it needful to inquire, since the organization was perfected under the one or the other. Suffice it to say that until the act of March 4, 1897, the plaintiff was governed either by the provisions of Sections 770–790, or of Sections 800–845 of the Civil Code.

The act of March 4, 1897, is entitled, "An act to provide for the organization, regulation and inspection of building and loan associations and to repeal Sections 770" to "845 of the Civil Code of Montana." Sections 1 and 2 are as follows:

"Section 1. That a corporation for the purpose of raising money to be loaned among its members shall be known in this act as a 'building and loan association.' Associations organized under the laws of this state shall be known in this state as 'domestic' associations, and those organized under the laws of other states and territories as 'foreign' associations. Associations may be organized and conducted under the general laws of Montana, relating to corporations, except as otherwise provided in this act.

"Section 2. Any building and loan association heretofore organized and existing under and by virtue of the laws of the state of Montana, may be incorporated under the provisions of this act, by calling a meeting of its stockholders upon notice published in a paper having a general circulation in the

county in which the general office of the company is located, and by mailing a notice of such meeting to the last known address of its stockholders ten days previous to such meeting. Should a majority of the stock vote to become incorporated under this act, the president and secretary shall file a certificate of the vote with the secretary of state, and such companies shall thereafter act, and be incorporated under this act. The validity of its securities and contracts shall in no wise be affected by its reformation as provided in this section.''

Section 17 provides that ''the state examiner shall examine all building and loan associations doing business in this state and governed by this act, once a year.''

Section 25 is as follows: ''It shall be unlawful for any building and loan association to do business in this state without having first complied with the provisions of this act, and any association violating any of the provisions of this act, or failing to comply with any of its provisions, shall be fined not less than fifty nor more than one thousand dollars, to be recovered by an action in the name of the state, and on collection paid into the state treasury, and any officer, employe, or other person who solicits business for, aids or assists, any building and loan association to do business contrary to the provisions of this act, or without having complied with the provisions, shall be guilty of a misdemeanor, and on conviction thereof shall be fined not more than five hundred dollars or imprisoned not more than six months, or both. Such fines when collected to be paid into the state treasury: provided, that except as to taxation, this act shall not affect any such association heretofore organized under the laws of the state of Montana, unless it elects to come under its provisons.''

Section 28 repeals in terms Sections 770 to 845 of the Civil Code.

In construing a statute, effect must, if possible, be given to all its language (*State* v. *Cave*, 20 Mont. 468, 52 Pac. 200), and the office of the court ''is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted,

and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all" (Section 3134, Code of Civil Procedure). The inten ion of the legislature is to be pursued, and, when a general and particular provision are inconsistent, the latter is paramount. So a particular intent will control a general one that is inconsistent with it. (Section 3135, Code of Civil Procedure.)

The question whether a repeal of a prior statute, absolute and unqualified in terms, can for any reason be limited in its operation, has frequently arisen; and the courts have uniformly hel·l that, whenever the language of the repeal appears to have been used or intended in a limited sense, effect must be given to such intent, as in the interpretation of other statutes. "A clause in a statute purporting to repeal other statutes is subject to the same rules of interpretation as other enactments, and the intent must prevail over literal interpretation." (*Smith* v. *People*, 47 N. Y. 330; Bishop on Written Law, Sec. 151.) "It not infrequently happens that clauses of a law, which are in themselves clearly general in their pertinency and significance, creep into the body of some particular section of the act, and thus provoke argument as to their intended place and use. Such things often happen by the legislature tacking on amendments to provisions in original bills introduced, or by careless engrossment, or by mistake in compilation of the law for publication; but if the words are explicit, or, even if they are not, if the intention of the law may be fairly gathered from the context, it is the court's duty to collect that intention." (*State* v. *First District Court*, 19 Mont. 506, 507, 48 Pac. 1104.)

We are all of the opinion that the intention of the legislature was to limit the effect of the act of 1897 to corporations thereafter formed, to those theretofore created which elect to assume the burdens imposed and exercise the privileges granted by it, and to foreign corporations. Intent of the legislature must ordinarily be sought in the language of the act by which its will is voiced. Examination of the whole act in question discloses no uncertainty or ambiguity. Provision is made for

the incorporation, after June 1, 1897 (when the act took effect), of corporations of the nature of plaintiff. Permission is given by section 2 for building and loan associations organized before that time to become corporations under, and avail themselves of, its provisions by vote of the shareholders; but no command is laid upon them. The privilege of becoming incorporated under, and being governed and regulated by, the act may be exercised or not, at pleasure. By section 17, recognition is made of the fact that building and loan associations theretofore incorporated in Montana may thereafter continue to exist and lawfully transact business without being governed by, or becoming amenable to, the act. Unless it elects to take advantage of the permission given by section 2, a domestic association, organized prior to June 1, 1897, shall not, in any way, except as to taxation, be affected by the act. Such a corporation as the plaintiff is excluded from the operation of the act. The proviso quoted is broad and comprehensive. Except as to taxation, the act shall not affect the class of corporations to which the plaintiff belongs. The word "affect" is here used in the sense of operate, or act on, or concern. The proviso is a limitation extending to and qualifying the whole act, and in construing the act every section must be considered in connection with the saving clause which limits it, and read as if the clause were literally inserted. Section 28 must, therefore, be read as if the proviso were a constituent part of it, so that, as applied to the case at bar, it would appear, in effect: Sections 770 to 845 of the Civil Code are hereby repealed; provided that, except as to taxation, this section shall not affect any corporation organized under them, unless it elects to come under the provisions of this act by complying with the conditions prescribed in section 2 thereof. Indeed, the proviso is, at least, tantamount to an enactment in a separate section. The purpose, then, of the act is to make provision for the organization, regulation, and inspection of all building and loan associations, except those domestic associations theretofore incorporated which fail to come under its provisions; and to repeal sections 770 to

845, except as to the corporations taken out of the act by the proviso, and in respect of these the sections, otherwise repealed, are continued in force.  The proviso was intended for the purpose of taking such corporations out of the general act, and leaving them to be governed and regulated by other laws applicable to them.  From the whole act it appears that the repeal was intended to be, not absolute and unconditional, but qualified and limited by the saving clause, and plaintiff comes within the class of corporations expressly excepted, save as to taxation, by section 25 from the operation of the act.  Defendant relies upon *Attorney General* v. *Borough of Anglesea*, (N. J.), 33 Atl. Rep. 971, as an authority in support of his contentions; but a reading of the opinion in that case shows that whatever was there said touching any question here raised was unnecessary to a decision.

The attorney general advances many arguments in the effort to show that the legislature intended to repeal unconditionally sections 770 to 845.  He urges that if the proviso in section 25 be given effect, this condition would exist:  Domestic associations, organized prior to June 1, 1897, and not electing to come under the act of 1897, which do business only in the county of their chief office, are governed by Sections 770 to 790 of the Civil Code; such associations doing business in more than one county are controlled by sections 800 to 845; while foreign associations, and all domestic associations organized after June 1, 1897, are operated under and controlled by the act of 1897.  The condition so outlined may exist, and may result in some mere inconvenience, but we think the intention of the legislature is manifest from the plain language used, which is not fairly susceptible to more than one construction, and this conclusion prevents us from looking to the consequences which are likely to ensue.

While it is unnecessary, and might be improper, to express an opinion as to whether the board of building and loan commissioners, whose existence is provided for in sections 800 to 845, is abolished by the act of 1897 in question, we observe that by subdivision 5 of section 491 of "An act to amend sec-

tions 490 and 506, inclusive, being all of Article 11, of Chapter 3, Title 1, Part 3, Political Code of Montana, providing for the appointment of a state examiner, and defining his duties and powers," approved March 4, 1897, all building and loan associations are subjected to examination and supervision by the state.

It is urged that the purpose of the proviso in section 25 was to continue in force sections 770 to 845 so far only as might be necessary to sustain the existence of corporations organized thereunder, so that in all respects, save as to formation and life, the law of 1897 would control. This theory is in conflict with the clear intention disclosed by sections 2, 17 and 2 5, Act of 1897. In *Murphy* v. *Pacific Bank* (Cal.) 51 Pac. 317, a like contention was made in a case presenting for interpretation statutes somewhat similar to those here involved. Section 287 of the Civil Code of California prescribes the mode in which corporations then existing may make and certify their election to continue their life under the code, and proceeds: "And thereafter the corporation shall continue its existence under the provisions of this code which are applicable thereto, and shall possess all the rights and powers and be subject to all the obligations, restrictions and limitations prescribed thereby." Section 288 provides: "No corporations formed or existing before twelve o'clock, noon, of the day upon which this code takes effect, is affected by the provisions of part 4, of division 1, of this code, unless such corporation elects to continue its existence under it as provided in section 287; but the laws under which such corporations were formed and exist are applicable to all such corporations, and are repealed subject to the provisions of this section." The court say: "The distinction here made between those corporations which should elect to come under the code provisions and those that did not is clearly manifest. If no such distinction was intended, it would have been quite sufficient to say that no corporation should cease to exist because of the adoption of the code, but thereafter all corporations existing at the time the code takes effect shall be governed by its provisions alone, and there

would have been in that case no necessity or propriety for an election on the part of the corporation to come under its provisions. This construction is supported by *Robinson* v. *Southern Pacific Railway Co.*, 105 Cal. 549, 550, 38 Pac. 94, 722, though the question was not fully considered.'' It would seem that the opinion in *Estate of Eastman*, 60 Cal. 308, tends to the same conclusion. We express no opinion upon the result reached in the case from which the quotation is made, but refer to the reasoning as illustrating the views entertained by a respectable court with respect to statutes bearing a resemblance to, but more difficult of construction than, those presented to us in the case at bar. The scope of the words, ' the laws under which such corporations were formed and exist are applicable to all such corporations,'' would seem to be the chief feature, distinguishing upon principle the question in *Murphy* v. *Pacific Bank* from the one involved in this proceeding and just considered.

2. The proviso is assailed as being repugnant to Section 23, Article 5, of the Constitution of Montana, providing that ''no bill  *  *  *  shall be passed containing more than one subject which shall be clearly expressed in its title: but if any subject shall be expressed in any act which shall. not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.'' Its validity is also questioned because of section 26 of article 5: ''The legislative assembly shall not pass any local or special laws in any of the following enumerated cases, that is to say, chartering  *  *  *  loan and trust companies. In all other cases where a general law can be made applicable, no special law shall be enacted.''

Neither objection is well urged. The title of the act of 1897 makes no specific reference to corporations then existing, but the omission is not fatal to the proviso. The act is a general revision of the laws relating to the one subject embraced therein, and its title is ''An act to provide for the organization, regulation and inspection of building and loan associations, and to repeal sections 770 to 845.'' It declares that

domestic building and loan associations theretofore incorporated shall (except as to taxation) be governed and regulated thereby only in the event such associations shall elect to come under its provisions. It expressly excludes from its operation corporations in the situation of plaintiff; they are not affected by the act. The objection is clearly bad, within the principles announced in *Hotchkiss* v. *Marion*, 12 Mont. 218, 29 Pac. 821; *Jobb* v. *Meagher Co.*, 20 Mont. 436, 51 Pac. 1034. See, also, *In re Ryan*, 20 Mont. 64, 50 Pac. 129.

The second objection is without merit. The proviso is neither local nor special, nor does it purport to charter an association. It is general in its terms, and operates alike upon all corporations of the class which it was intended to, and does, except out of the act. This is so obvious that argument is not required. We make the following citations, however, in support of our conclusion: *State* v. *Long*, 21 Mont. 26, 52 Pac. 645. Thompson on Corporations, Sec. 586; *Ex parte Smith et al*, 38 Cal. 702; *Hazelett* v. *Butler University*, 84 Ind. 230; *Hymes* v. *Aydelott*, 26 Ind. 431; *McLunich* v. *Railway Co.*, 20 Iowa, 338; *Van Riper* v. *Parsons*, 40 N. J. Law, 123; *Reading* v. *Savage*, 124 Pa. St. 336, 16 Atl. 788; *Chicago Ry. Co.* v. *Iowa*, 94 U. S. 163; *Welker* v. *Potter*, 18 Ohio St. 85; *State* v. *Pond*, 93 Mo. 607, 6 S. W. 469. While no one of them in its facts may be directly in point, each recognizes or declares some rule of interpretation properly applicable to these sections of our constitution.

The motion to quash is denied. Defendant refuses to further plead. It is therefore ordered that a peremptory writ of prohibition issue out of the office of the clerk of this court, as prayed.

*Writ granted.*

PEMBERTON, C. J., and HUNT, J., concur.