# 180    SUPREME COURT OF INDIANA,

## ARNETT, CONTROLLER, v. STATE, EX REL. DONOHUE.

[No. 20,748.    Filed February 22, 1907.]

1. CONSTITUTIONAL LAW.—*Police Power.—Exercise of, by State. —Local Government.*—The maintenance of good order and the suppression of crime are matters of state interest; and whether they can best be obtained by means of a centralized or a local government, is wholly for the legislature.    p. 182.

2. SAME.—*Metropolitan Police Law.—Local Support.*—The state may impose upon cities and towns the duty of supporting their police appointed by the central authority designated by law. *City of Evansville* v. *State, ex rel.*, 118 Ind. 426, distinguished. p. 182.

3. SAME. — *Officers. — Salaries.—Delegation of Power to Fix.— Statutes.*—The act of 1901 (Acts 1901, p. 24, §3717 Burns 1901), requiring the Governor to appoint metropolitan police boards in certain cities, and, within certain limits, to fix their salaries, and section two of the act of 1897 (Acts 1897, p. 90, §3718 Burns 1901), giving such boards the right to designate the salaries of the police appointed by them, are not unconstitutional as attempts to delegate the legislative powers of the State. p. 183.

4. SAME. — *Delegation of Legislative Powers. — Execution of Laws.*—The legislature cannot delegate to others the power to make laws, but it may give discretion to others in the enforcement of the laws made.    p. 184.

5. SAME.—*Delegation of Legislative Powers.—Metropolitan Police.—Salaries.*—The legislature may delegate to the Governor the right to fix the salaries of metropolitan police within certain maximum and minimum limits.    p. 185.

6. SAME. — *Established Usage. — Effect.* — In cases of doubtful constitutional validity, the established customs and usage of the state will be considered in upholding a statute.    p. 186.

7. STATUTES.—*Repeal.—Metropolitan Police Law.*—The act of 1905 (Acts 1905, p. 219, §3462 *et seq.* Burns 1905), governing towns and cities, does not repeal the metropolitan police law of 1897 or its amendment of 1901 (Acts 1897, p. 90, Acts 1901, p. 24, §3717 *et seq.* Burns 1901).    p. 187.

8. SAME. — *Construction. — Intent.—Letter.*—The spirit and not the letter of a statute governs its interpretation.    p. 188.

Arnett *v.* State, *ex rel.*—168 Ind. 180.

9. STATUTES.—*Language.—General.—Special.*—Special provisions in a statute govern general ones.  p. 188.

10. SAME.—*Statutory Construction.*—Where the legislature declares the construction of an act, by a provision therein, the courts will give effect to such construction, though, without it, a different construction would be given.  p. 189.

11. SAME.—*Construction.—Legislative Journals and Records.*— The courts will, in the construction of a doubtful statute, examine, as an aid, the legislative journals and records.  p. 189.

12. SAME. — *Construction. — Departmental.* — Where a statute, dealing exclusively with executive powers and duties, has been interpreted and acted upon by the executive department, and a different construction would prejudice a great many people, the courts will incline to the executive interpretation.  p. 190.

13. SAME. — *Construction. — Provisos.—Repugnancy.*—The rule that a proviso governs an antecedent repugnant provision in a statute, is a practical one, to be used only where all other methods of interpretation fail.  p. 190.

14. SAME.—*Repealing Clauses.—General.—Construction where Special Provision Otherwise.*—A general repealing clause in a statute does not govern a special provision in the statute, providing that certain laws on the same subject shall not be repealed thereby.  p. 191.

From Howard Superior Court; *B. F. Harness,* Judge.

Mandamus by the State of Indiana, on the relation of Michael Donohue, against William H. Arnett, as controller of the City of Kokomo. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*C. O. Willitts, Warren R. Voorhis* and *Blacklidge, Shirley & Wolf,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, William C. Geake, Henry M. Dowling* and *Bell & Purdum,* for appellee.

GILLETT, J.—In attempting to secure a reversal of the judgment of the court below, appellant contends (1) that the act of February 28, 1897 and the amendment of 1901 (Acts 1897, p. 90, Acts 1901, p. 24, §3717 *et seq.* Burns 1901), providing for a metropolitan police force in certain cities of the State, are unconstitutional; and (2) that said

acts are repealed by an act concerning municipal corporations approved March 6, 1905 (Acts 1905, p. 219, §3462 et seq. Burns 1905).

It·is argued that the act of 1897 is invalid because it places the burden of supporting the police system upon the municipality, without giving it any control over the expenditures therefor. The case of *City of Evansville v. State, ex rel.* (1889), 118 Ind. 426, 4 L. R. A. 93, is cited in support of this contention. In that case, however, the fact was that the legislature had provided for the creation of a single board, to which it attempted to give the control of the city's police and fire departments, and the act, taken as a whole, was adjudged invalid, as an unwarranted interference with the right of local self-government. The statute before us is quite different in principle, since it has relation only to the department of police. The mainte-

1.  nance of peace and quiet and the suppression of crime and immorality are matters of general interest, and to the attainment of these ends the cities and towns are largely subject to legislative control. As the commonwealth is a unit in respect to its interest in such matters, the regulation thereof is a proper subject of legislation, and whether cities and towns in respect to these matters shall have a centralized or de-centralized form of government is a political question with which the courts have nothing to do. Matters of general interest are not necessarily required to be submitted to the judgment and discretion of the people of the locality. So far as principle is concerned, it is no objection that the State, while im-

2.  posing upon cities and towns the burden of supporting their police organizations, designates its own agencies to make its plan efficient. The essential elements of what is known as the metropolitan police system in the government of municipalities have been so often vindicated as against constitutional objections that the questions should now be considered at rest. *State, ex*

*rel.*, v. *Kolsem* (1892), 130 Ind. 434, 14 L. R. A. 566; *State, ex rel.*, v. *Fox* (1902), 158 Ind. 126, 56 L. R. A. 893; *People* v. *Draper* (1857), 15 N. Y. 532; *People* v. *Shepard* (1867), 36 N. Y. 285; *People* v. *Mahaney* (1865), 13 Mich. 481; *People* v. *Common Council, etc.* (1873), 28 Mich. 228, 15 Am. Rep. 202; *Gooch* v. *Exeter* (1900), 70 N. H. 413, 48 Atl. 1100, 85 Am. St. 637; *Mayor, etc.,* v. *State* (1859), 15 Md. 376, 74 Am. Dec. 572; *Commonwealth* v. *Plaisted* (1889), 148 Mass. 375, 19 N. E. 224, 2 L. R. A. 142, 12 Am. St. 566; *State* v. *Covington* (1876), 29 Ohio St. 102; *Police Com.* v. *City of Louisville* (1868), 3 Bush (Ky.) 597; *State, ex rel.,* v. *St. Louis County Court* (1864), 34 Mo. 546; *State* v. *Hunter* (1888), 38 Kan. 578, 17 Pac. 177; *State, ex rel.,* v. *Seavey* (1887), 22 Neb. 454, 35 N. W. 228; 2 Cooley, Taxation (3d ed.), 1295, 1296; 1 Dillon, Mun. Corp. (4th ed.), §60; 2 Smith, Mun. Corp., §1378.

It is further contended that the act of 1897 amounts to an unlawful attempt to delegate a legislative power, in that, within maximum and minimum limits, it authorizes the Governor to determine the salaries of the police commissioners, and also, within fixed limits, authorizes the latter to determine the compensation of the officers of the police force. It must, of course, be admitted that the legislature may with propriety fix the salary which attaches to a public office, but whether a constitution contains an express division of the powers of government, or whether the division is to be implied from the framework of the instrument, we are of opinion that the fixing of the compensation of a public officer is not so inherently of a legislative character that it may not be delegated. The contention of counsel for appellant involves a misapprehension of the breadth of the grant to the General Assembly of power to enact laws.

In *Wayman* v. *Sawthard* (1825), 10 Wheat. 41, 6 L. Ed. 253, Chief Justice Marshall, said: "It will not be

contended, that congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But congress may certainly delegate to others, powers which the legislature may rightfully exercise itself." "The true distinction," as said in *Cincinnati, etc., R. Co.* v. *Commissioners, etc.* (1852), 1 Ohio St. 77, 88, "therefore, is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no valid objection can be made." As stated in *Locke's Appeal* (1873), 72 Pa. St. 491, 13 Am. Rep. 716: "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the lawmaking power, and must, therefore, be a subject of inquiry and determination outside the halls of legislation." It was said in *Dowling* v. *Lancashire Ins. Co.* (1896), 92 Wis. 63, 68, 65 N. W. 738, 31 L. R. A. 112, that the general rule that legislative powers cannot be delegated must be understood as applicable only to cases where the discretion is essentially legislative. It was observed in *State, ex rel.,* v. *Kolsem* (1892), 130 Ind. 434, 442, 14 L. R. A. 566, and followed in *City of Terre Haute* v. *Evansville, etc., R. Co.* (1897), 149 Ind. 174, 37 L. R. A. 189, that "when the legislature has the power over a subject, it is the sole judge of the means that are necessary and proper to accomplish the object it seeks to attain."

In the case last cited this court upheld the authority of the General Assembly to vest in persons occupying ju-

dicial offices the power to appoint city commissioners, and it has been held that the legislature may even make a private corporation an agency to carry out a regulation of government. *Wilkins* v. *State* (1888), 113 Ind. 514; *Ferner* v. *State* (1898), 151 Ind. 247. Indeed, it may be said that our recent cases have gone much further in recognizing the power of the General Assembly to delegate discretionary authority than is here involved, since they have upheld the right, under the statutes, of the State Board of Health to adopt reasonable rules, by-laws, and regulations to carry out the health laws of the State. *Blue* v. *Beach* (1900), 155 Ind. 121, 50 L. R. A. 64, 80 Am. St. 195; *Isenhour* v. *State* (1901), 157 Ind. 517, 87 Am. St. 228. As was stated in *Blue* v. *Beach, supra:* "It cannot be said that every grant of power to executive or administrative boards or officials, involving the exercise of discretion and judgment, must be considered a delegation of legislative authority. While it is necessary that a law, when it comes from the lawmaking power, should be complete, still there are many matters relating to methods or details which may be, by the legislature, referred to some designated ministerial officer or body." See, also, *Field* v. *Clark* (1892), 143 U. S. 649, 12 Sup. Ct. 495, 36 L. Ed. 294; *Walker* v. *Towle,* 156 Ind. 644, 53 L. R. A. 749; *People, ex rel.,* v. *Burr* (1859), 13 Cal. 343; *Leeper* v. *State* (1899), 103 Tenn. 500, 53 S. W. 962, 48 L. R. A. 167; *Reed* v. *Dunbar* (1902), 41 Ore. 509, 69 Pac. 451; *City of San Antonio* v. *Jones* (1866), 28 Tex. 19, 32; 6 Am. and Eng. Ency. Law (2d ed.), 1029.

Authority is not wanting on the precise question in hand. In *Gooch* v. *Exeter* (1900), 70 N. H. 413, 48 Atl. 1100, 85 Am. St. 637, the court had before it the question of the validity of a statute which vested in a board of police commissioners, the members of which were appointed by the governor, the right to appoint police officers. In the course of the opinion the court said: "The pay of an officer is

an incident of his office. · Obviously, power 'to name and settle' an officer and set forth his duties includes power to fix his compensation. The general court may fix the compensation directly, or delegate authority to fix it to a governmental agency." See, also, 23 Am. and Eng. Ency. Law (2d ed.), 394.

It appears to us that it was wholly appropriate for the General Assembly to fix maximum and minimum limits of salaries of the various officers who were to be employed under the law in the cities of the State, leaving it to other agencies to exercise a ·degree of discretion in determining what salaries should, from time to time,· obtain in the various cities to which the act applies.

We do not regard the decisions on which counsel for appellant rely as in point on the question in hand. The cases of *State, ex rel.,* v. *Rogers* (1904), 71 Ohio St. 203, 73 N. E. 461, and *Commonwealth* v. *Addams* (1894), 95 Ky. 558, 26 S. W. 581, are ruled by the fact that it was a matter of constitutional requirement that the legislature fix the compensation of public officers. *Smith* v. *Strother* (1885), 68 Cal. 194, 8 Pac. 852, involved an attempted delegation to a court of the power to fix the salary of an officer, and, as the supreme court of that state construed this to be an attempted grant to the tribunal itself, it is obvious that a very different consideration was involved, since courts, as such, can only exercise judicial powers. *Ex parte Griffiths* (1889), 118 Ind. 83, 3 L. R. A. 398, 10 Am. St. 107. The case of *Smith* v. *Strother, supra,* should be considered in the light of *McAllister* v. *Hamlin* (1890), 83 Cal. 361, 23 Pac. 357.

Provisions may be found in the acts of the first session of the General Assembly after the adoption of the Constitution delegating to the Governor, or to other 6.    agencies, the discretionary power to fix the compensation of officers and employes, and this has since been a common practice, particularly in the government

of the benevolent and penal institutions of the State. Indeed, it may be said that since 1852 this tendency in legislation, as the affairs of government become more complex, has manifested itself in an ever broadening stream. All doubtful questions of constitutional construction must give way before such a usage as this. As observed by Lord Hale, Time is wiser than all the wits of the world, and the law which has been tried by it has the highest possible evidence in its favor. We hold that the act under consideration is not open to the constitutional objections urged.

Taking up the contention that said law is repealed by the act concerning municipal corporations passed in 1905 (Acts 1905, p. 219, §3462 *et seq.* Burns 1905), we may first briefly indicate the pertinent facts concerning the latter enactment. Section forty-two of the act (§3466 Burns 1905) classifies all of the cities of the State into five classes. By this section, cities having a population of 10,000 and less than 20,000, according to the last preceding United State census, are denominated cities of the fourth class. By section 158 (§3582 Burns 1905) provision is made for a department of public safety. Then follows the proviso that in cities of the third class, on the adoption of an ordinance therefor, and in cities of the fourth class, without such ordinances, the board of public works shall exercise the powers and perform the duties required of the board of public safety. The larger part of the remaining provisions of section 158 deal with the powers of the board of public safety, and this may be said of section 159 (§3583 Burns 1905). It is also to be noted that the latter section makes express mention of cities of the fourth class. Section 158 *supra,* closes with the following proviso: "And, provided, further, that in any city in which a board of metropolitan police commission is now or may hereafter be established by law such board of metropolitan police commissioners shall have full control and management of the police officers of

such city in accordance with the laws providing for the creation of such boards and prescribing the duties of such police commissioners, and nothing herein shall be construed as affecting the control or management of the police department in any city or cities now or hereafter operating under the laws establishing such board of police commissioners." As a matter of fact, all of the cities of the State which had a sufficient population to bring them into the fourth class at the time the act of 1905 took effect were already under the metropolitan police system, and this is what gives rise to the difficulty. The legislative journals show that the bill, as prepared by the codification commission, did not contain this second proviso, and the bill as it passed the senate was in the form indicated. It was afterwards amended in the house, by adding said proviso, and, after the house had passed the bill as amended, it went back to the senate, and that body concurred in the amendment, and the bill passed.

In taking up the question as to the effect of the proviso, it will be noticed that it is provided that as to any city in which a board of metropolitan police commissioners now exists such commissioners shall have full control and management of the police officers of such city, in accordance with the laws providing for the creation of such boards and prescribing the duties of such police commissioners, and then follows an interpretation clause.

It is a fundamental rule of statutory construction that it is the intent or spirit of an enactment, rather than its letter, which is to govern. A construction will not be 8. adopted which leads away from the true intent. A further proposition, which is not without importance here, is the fact that the opening language 9. of the proviso is specific, rather than general. There is no mistaking the force of the language used. But, not content with this, the legislature went further, and provided that, "nothing herein shall be construed

as affecting the control or management of the police department in any city or cities now or hereafter operating under the laws establishing such board of police commissioners." It was said by Frazer, C. J., in *Smith* v. *State* (1867), 28 Ind. 321, 325: "Where in an act it is declared that it shall receive a certain construction, the courts are bound by that construction, though otherwise the language would have been held to mean a different thing." To the same effect is *State, ex rel.,* v. *Harrison* (1888), 116 Ind. 300, and *Douglass* v. *State* (1898), 21 Ind. App. 302. Judged by this standard, it would appear that further discussion is unnecessary.

In dealing with inconsistencies occasioned by amendments, it is always proper to judge the question of construction in the light of the legislative journals. In *Edger* v. *Board, etc.* (1880), 70 Ind. 331, 338, this court said: "It has never been held by this court, that for the purpose of construction or interpretation, and with the view of ascertaining the legislative will and intention in the enactment of a law, the courts may not properly resort to the journals of the two legislative bodies to learn therefrom the history of the law in question, from its first introduction as a bill until its final passage and approval. Where, as in this case, a statute has been enacted, which is susceptible of several widely differing constructions, we know of no better means of ascertaining the will and intention of the legislature, than that which is afforded, in this case, by the history of the statute, as found in the journals of the two legislative bodies." See, also, *Walter A. Wood, etc., Mach. Co.* v. *Caldwell* (1876), 54 Ind. 270, 23 Am. Rep. 641; *Stout* v. *Board, etc.* (1886), 107 Ind. 343; *Blake* v. *National Banks* (1874), 23 Wall. 307, 23 L. Ed. 119; *Buttfield* v. *Stranahan* (1904), 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525; *Simpson* v. *Story* (1888), 145 Mass. 497, 14 N. E. 641, 1 Am. St. 480, and cases cited; *Baker* v. *Payne* (1892),

22 Ore. 335, 29 Pac. 787; *Small* v. *Small,* (1889), 129 Pa. St. 366, 18 Atl. 497; Maxwell, Interp. of Stat. (2d ed.), 306; 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §470, and cases cited. It is easy to understand how, in the hurry of legislation, there may be a failure, in connection with the adoption of an amendment, carefully to eliminate provisions which are really intended to be superseded, but it would be to discredit the intelligence of the lawmaking power to indulge the supposition that, in the adoption of an amendment containing such a definite statement of what was intended as is found in the amendment in question, the General Assembly failed to appreciate the force of such words.

We may also refer to the fact that the Governor of the State, who is charged with the enforcement of the law, has throughout treated the metropolitan police law as in force in all of the cities to which the act of 1897 relates, and when to this is added the consideration that to unsettle this construction would be likely to prejudice many people of the State who have acted upon it, we have a case in which it is clear, if there be room for substantial doubt, that the leaning should be in favor of the interpretation of the executive department. *Bate Refrigerating Co.* v. *Sulzberger* (1895), 157 U. S. 1, 34, 15 Sup. Ct. 508, 39 L. Ed. 601; *Hewitt* v. *Schultz* (1901), 180 U. S. 139, 156, 21 Sup. Ct. 309, 45 L. Ed. 463. This, we may observe, was the course which was adopted in *Blake* v. *National Banks, supra,* where repugnant matter had been introduced into an act by an amendment.

Counsel for appellant bring forward the old doctrine, which has been usually applied in cases of repugnancy as between a proviso and the matter which precedes it, that it is the last word of the legislature which is to govern, but in this case counsel seek, by invoking this principle, to destroy the proviso, by reason of the reference to cities of the fourth class in section 159.

There can be no gainsaying the general rule, where the court, after considering the text in the light of the recognized canons of construction, and after considering all such extrinsic matters as may be invoked, is still unable to declare the legislative meaning, but, as was said in *Renner* v. *Bennett* (1871), 21 Ohio St. 431, 445, "it is a rule of necessity, and of last resort." It is obvious that this rule is but a practical expedient, which can really have nothing to do with the true intent of the legislature. It is, therefore, never to be applied where the court can find a sufficient reason, going to the intent, on which to base an interpretation of the statute. 2 Lewis's Sutherland, Stat. Constr. (2d ed.), §350; *State, ex rel.,* v. *Mulhern* (1906), 74 Ohio St. 363, 78 N. E. 507; *McCormick* v. *Village of West Duluth* (1891), 47 Minn. 272, 50 N. W. 128; *Kansas, etc., R. Co.* v. *Commissioners, etc.* (1876), 16 Kan. 587; *Sams* v. *King* (1882), 18, Fla. 557.

Counsel for appellant also refer to the general repealing clause of the act of 1905, *supra,* in support of their contention that the act of 1897, *supra,* is repealed, but such repealing clause, being general, like the schedules or the definitions of words which long enactments frequently contain, ought not to be treated as out of accord with that which is specific and controlling in the expression of the intent. Such clauses will be restrained, where necessary, to avoid this result. In other words, a repealing clause, like any other provision of the statute, is to be subjected to rules of construction, and the intent will prevail over the literal import of the words. *Smith* v. *People* (1872), 47 N. Y. 330; *State, ex rel.,* v. *Moorhouse* (1896), 5 N. Dak. 406, 67 N. W. 140; *Home Bldg., etc., Assn.* v. *Nolan* (1898), 21 Mont. 205, 53 Pac. 738; 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §293. It is our conclusion that appellant's contention that the act of 1897, *supra,* is repealed has not been maintained.

The judgment is affirmed.