McCAULEY, RESPONDENT, v. MONTANA CENTRAL RAILWAY COMPANY, APPELLANT.

[Argued December 30, 1891. Decided January 25, 1892.]

RAILROADS—*Negligence—Injury to stock.*—In an action against a railroad company to recover for injuries to stock, the admissions of an agent of the company, acting within the scope of his authority and with knowledge of the circumstances, that he had ordered the animal killed and the beef sold for the benefit of the company, and the receipt of the proceeds of such sale by the company, establish a *prima facie* case of the admission of negligence by the company, under section 717, fifth division of the Compiled Statutes, providing that in case of injury to stock the body of the animal injured shall belong to the company unless the owner thereof shall elect to take the same in lieu or in part payment of damages. (DE WITT, J., dissenting.)

*Appeal from Fifth Judicial District, Jefferson County.*

Action for damages. The cause was tried before GALBRAITH, J. The plaintiff had judgment below.

*Henry G. McIntire,* for Appellant.

*Adkinson & Miller,* for Respondent.

BLAKE, C. J.—This action was brought to recover damages for injuries to a cow, in the month of December, 1889, through the negligence of the agents and servants of the appellant, a railroad corporation.

There is only one question for our consideration. At the con-

clusion of the evidence for the plaintiff "the defendant moved
the court that plaintiff be nonsuited because he had introduced
and offered no testimony tending to show any negligence on
the part of the defendant." The motion was overruled, and,
no evidence being introduced by the defendant, judgment was
entered in favor of the plaintiff. All the testimony upon this
point is given in the transcript. The plaintiff testified that he
was acquainted with W. B. Green; that he went to see him to
settle for the cow; that Mr. Green was acting as claim agent
at the time of the defendant; that Mr. Green "said he was
on the train at the time, and ordered the cow killed, and he
ordered the beef shipped to Helena to be sold for the benefit of
the company. He said that he ordered it to be killed, or killed
it himself, but as to which I can't say now. He said nothing
more as to how the cow was killed, but that she had one leg
broken, and he ordered it killed — either killed it himself, or
ordered it killed; that the train had knocked her off the track.
. . . . I was told that this cow was killed on the Montana
Central road. Mr. Green told me that, and he also told me
that he was on the train at the time." This testimony con-
cerning the conduct of Mr. Green can be easily understood by
observing this section of the statutes: " In every case of the
wounding and killing of any such cattle or sheep, the price of
the damages [for which] is fixed by this chapter, the body of
such animal shall belong to such company, unless the owner
thereof shall elect to take the same in lieu of said damages, or
part thereof, within twenty-four hours after said wounding or
killing; but in every other case the railway or railroad company
may proceed to take care of and preserve the body of said
animal; and it shall be the duty of said company to preserve
the hide of such animal for at least thirty days after such kill-
ing, for inspection, by said railroad or corporations at the
station-house nearest to the place where such killing occurred."
(§ 717, Comp. Stats. div. 5.) Green was upon the train which
inflicted the injury upon the animal, and availed himself of the
provisions of the law for the benefit of railroad companies when
they are liable to be mulcted in damages for the killing of live
stock.

The action of this agent of the corporation, within the scope

of his duties, and the receipt of the proceeds of the sale of the beef, are sufficient to establish a *prima facie* case of the admission of negligence against the defendant. It is conceded by the appellant that the respondent has the right to bring an action for the conversion of the animal, and therefore it is contended that the appropriate remedy has not been pursued. But this officer of the corporation was acting rightfully, under a statute which authorizes these proceedings, and hence there was no conversion of th' property. His conduct, and that of the appellant, were admissions as potent as words, and were entitled to be weighed by the jury.

It is ordered and adjudged that the judgment be affirmed.

*Affirmed.*

HARWOOD, J. (*concurring*).—The problem in this case is to find justly, and on sound principles of law, whether or not any acts or circumstances proved in the case fairly indicate, as a *prima facie* showing, that there was negligence on the part of appellant in committing the injury complained of. Appellant contends there is no such showing, while respondent insists that certain conduct of the appellant proved amounts to a *prima facie* admission that the injury to the animal happened in consequence of appellant's negligence in operating its railroad.

Appellant is operating a railroad through open lands, upon which respondent has a right to pasture his domestic cattle. In order to determine the rights and liabilities of these parties in case of injury to any of such animals by the operating of the said railroad, the law provides (considering the statute and the case of *Bielenberg* v. *Montana U. Ry. Co.* 8 Mont. 271, together) that in case any such animals should be killed or injured by the operation of said railroad with due care, i. e., in case the injury or destruction occurred without any negligence on the part of appellant, its agent or employees, then it should be in no manner liable therefor; and it is further provided that, in case any such injury or destruction should happen through the negligence of appellant or its agents, then it should be liable to pay the owner of the animal injured the value thereof; but in that case appellant should have the animal so killed or injured, and the right to take it at once, on the happening of the event. With these legal conditions existing, it happened that a train

passing over said road, through said land, run upon and broke the leg of a certain cow belonging to respondent; and appellant being present, with its agents and employees, and its stock or claim agent, charged with the duty of looking after claims for injury to stock in such cases, and presumably knowing all the circumstances attending such injury, appellant's claim agent immediately proceeded to take, or cause to be taken, said injured cow, killed it, sold it, and took the proceeds for the benefit of the railroad company.

Now, when the terms and conditions of the law are considered, in reference to the circumstances shown and the conduct of appellant in relation to said animal, would it be a violent presumption to conclude that appellant had by its voluntary conduct indicated, as a *prima facie* showing, that said animal was run upon and injured under such circumstances as to make it lawful for appellant to proceed to take the injured animal and treat it as its own? Did appellant indicate apparently, or *prima facie*, as it is said, by the conduct of its agents, that it had done something, considering its conduct in connection with the law, to authorize it to follow up the injury by taking the animal? The taking followed the injury as part of one transaction; and, if appellant's conduct is to be construed as indicating *prima facie* that circumstances had so happened as to give it the right to take the animal, the very essence of those circumstances was negligence in committing the first injury. Otherwise, when the injury happened, if without negligence, appellant could have gone its way, and left the owner of the animal to make the best he could of a misfortune for which appellant was in no wise responsible. Appellant is presumed to have done as it did knowing the law and the exact conditions of its liability, and its rights, if liable. If it is not reasonable to draw the presumption just proposed from the conduct of appellant, then some other construction is to be put upon its acts. Are we to presume that when appellant, without negligence, ran its train upon and injured the animal in question, and knowing consequently that it was without liability for the injury, and consequently was without right to take the injured animal, nevertheless, under those circumstances, appellant wantonly and unlawfully went outside of the course of its business, and,

to add injury to misfortune, captured, butchered, and sold the animal, and pocketed the proceeds? Are we to presume that where the railroad company was clear of liability it unlawfully adopted this course of conduct? If there was no negligence on the part of the appellant, there was no liability; if there was no liability, it had no more right to take the crippled animal than any other person, and its taking was wrongful and unlawful; while, if the injury happened under circumstances of negligence on its part, it was liable for the injury, and it had a right to proceed as it did, and take the animal, and save what it could by assuming it. Here were two courses to pursue depending upon the very question whether or not negligence accompanied the injury. That was the very point which would order and shape and give course to appellant's conduct, provided it acted upon the knowledge it had as to the law and the facts, and desired to act lawfully. If there was negligence, it could lawfully take the animal. If there was no negligence, it could lawfully go its way with impunity. Are we to presume appellant took the wrong, the unlawful course, and knowing all the circumstances attending the injury, and knowing that the facts were such that no liability ensued against it from what had happened, still the appellant captured and butchered said wounded animal, and disposed of it in the market, and took the proceeds? Such is not to be presumed. No such construction is to be put upon the acts of appellant in this matter, where its conduct, in another view, can be regarded as lawful, and done in good faith, simply to avail itself of its rights; and this view involves the tacit *prima facie* admission by appellant's conduct that there was negligence on its part in committing the injury complained of, which fixed its liability and gave it the corresponding right to take the animal. "The law presumes that all acts are done in good faith until there is evidence to the contrary." (*McCagg* v. *Heacock*, 34 Ill. 476; 85 Am. Dec. 327.) Mr. Lawson, in his work on Presumptive Evidence, page 93, states the familiar rule of law as follows: "A person who is shown to have done any act is presumed to have done it innocently and honestly, and not fraudulently, illegally, or wickedly;" and cites many cases establishing and illustrating that rule.

I concur in affirming the judgment.

De Witt, J. (*dissenting*).—It is conceded in this case that the cause of action set up in the complaint is the negligent killing of plaintiff's cow by the defendant in December, 1889. It is conceded that, under the decision in *Bielenberg* v. *Montana U. Ry. Co.* 8 Mont. 271, the plaintiff cannot recover, and has not a *prima facie* cause of action, unless he shows some evidence of negligence by the defendant. It is conceded that there is not one word in the evidence tending to show any negligence on the part of the defendant. But the judgment is affirmed, and this court holds that *prima facie* proof of negligence was made by virtue of an admission of negligence, in that defendant took possession of the carcass of the cow killed; and this admission is construed out of the statute. (§ 717, Comp. Stats. div. 5.) That section is part of the Act of February 23, 1881. The first section of that act, which has become section 713 of the Compiled Statutes, provided, to state it briefly, that a railroad corporation that, in the operation of its railroad, killed an animal, should be liable to the owner for the value of the same, regardless of whether the killing was by the negligence of the railroad corporation. In other words, the railroad corporation was an insurer of the safety of all animals going upon its track. The statute was thus more tender of the safety of the domestic than of human animals. That section of the law, as a matter of course, fell before the first attack in this court. (*Bielenberg Case.*) Therefore, when the animal, the value of which is the subject of this action, was killed, the defendant was liable only in case its negligence was the cause of the killing. In accordance with this established view of the law, the plaintiff brought his action for the negligent killing, and he wholly failed in his proof.

But did defendant admit its negligence by the act of taking the carcass? The Act of the legislature of March 10, 1887 (Comp. Stats. §§ 720–729), was upon the same subject-matter as the Act of February 23, 1881, and they are all put together in the compilation as chapter 37. In the latter act we find a section, which is 726 of the compilation, as follows:—

" In all cases where any corporation, association, company, person or persons, shall be liable to the owners of any animals killed as provided in this act, they shall be authorized to skin

the same and shall be entitled to the carcass and hide thereof, unless the owner or owners thereof shall claim the same, in which event the amount of the value thereof shall be deducted from the amount of damages which would otherwise be due."

Whether section 726 repeals section 717 it is not necessary to decide. If section 717 is repealed, the way is very clear; but, in any event, if section 717 remains, it and 726 are *in pari materia,* and must be construed together.

Under chapter 37, the railroad company was not liable for all animals that it killed in the operation of its road. Section 716 provides: "If the owner of any stock shall drive any stock on the line of the track of any such company or corporation, with intent to injure such company or corporation, and such stock shall be killed or injured, such owner shall not receive any damage from such railroad company or corporation therefor. . . . ." Therefore, under the acts of the legislature that became chapter 37, the railroad company was liable for all animals killed by it, except those driven onto the track by the owner with intent to injure the railroad company. Now, we know for what killings the company was liable "as provided in the act"; and when they are so liable "as provided in the act," they are to own the carcass of the animal killed. I do not understand that it is claimed that the company owns the carcass, except by virtue of the provisions of this act.

Thus the taking of the carcass by the company, if it is an admission of anything, is an admission of what? It is an admission that they are liable "as provided in the act," section 726. What does liability "as provided in the act" mean? What are the elements of such liability "as provided in the act?" Mark, that no other liability is mentioned except that "provided in the act." No common-law liability by virtue of negligence is contemplated. I should suppose that the elements of such liability "as provided in the act" would be about as follows: (1) The venue; (2) ownership by plaintiff; (3) a value; (4) that the animal was not driven onto the track by the owner, although let it be noted that I do not speak of this element as one to be proved by the owner, or alleged in his complaint, or a matter in question, unless raised by an issue;

and (5) that the animal was killed simply, with no allegation or proof of negligence.

Now, concede that the taking of the carcass admits the liability of the company "as provided by the act," and that it admits all the elements of liability "as provided by the act." Then it admits all the elements of liability as above noted. But liability "as provided by the act" does not constitute legal liability; for, under the Bielenberg decision, to constitute liability there must be negligence. So that, when we concede that the taking of the carcass admits liability "as provided by the act," that taking does not admit any legal liability; for the liability under the act is not a legal liability, for it omits the vital element of legal liability, to wit, negligence. Therefore the taking of the carcass does not admit any negligence.

So, by applying the provisions of the act of the legislature to the conduct of claim agent Green in taking the carcass of the animal, the most that the railroad company is made to admit that is of interest in this contention is only that the company killed the cow. The killing alone is not *prima facie* evidence of negligence, in the absence of a special statute making it so, as was the law in this State when the alleged cause of action arose. (*Bielenberg Case*, and cases cited therein.)

The views that I express are, of course, independent of the legislation of March 2, 1891, as this killing occurred in 1889.

I am of opinion that the motion for a nonsuit should have been granted, and for that reason the judgment should be reversed.