## MENARD, Appellant *v.* MONTANA CENTRAL RAILWAY CO., Respondent.

[No. 1,020]

[Submitted January 20, 1899. Decided March 27, 1899.]

*Appeal— Order Granting New Trial — Record — Review— Railroads—Killing Stock—Evidence— Complaint— Corporations— Constitutional Law.*

1. The opinion of the lower court, though inserted in the record on appeal, cannot be resorted to, to add to the order sought to be reviewed, as the Code of Civil Procedure of 1895 does not require the opinion to be made part of the transcript.

2. Though a motion for a new trial, made for errors in law, is granted solely on the ground that plaintiff's cause of action is barred by limitations, the appellate court may consider other errors specified; and, if it appears from the whole record that the motion was properly granted, the order will be affirmed, though the reason given was wrong.
   *Obiter.*—If in the order granting a new trial the District Court explicitly excludes the ground that an abuse of discretion has been committed, or that the evidence is insufficient, or both, these grounds will not be considered on appeal, and the order will not be affirmed, unless it affirmatively appear from the record that the order should have been granted.

3. In an action against a railroad company for the killing of stock, evidence that the animals were found dead or dying near the track, and that the company's employes, as part of their regular duty, skinned the animals, does not warrant the direction of a verdict for plaintiff.

4. Civil Code, Section 400, provided that any domestic corporation existing when the Code took effect might elect, in a manner provided, to continue its existence under the provisions thereof. Section 401 provided that no corporations then existing should be affected by Part 4 of Division 1 of the Code, unless they should elect as above, but that the laws under which such corporations were formed and existed should be applicable thereto, and were repealed, subject to the provisions of the section. Sections 950 and 951 require railroad companies to fence their tracks and property, and make them liable for stock killed in default of such fence, or through their negligence. *Held,* that a domestic railroad company formed before the Code took effect, and which had not made an election as provided, was not subject to the last two sections.

5. Civil Code, Section 401, making corporations formed before the act took effect subject to laws then existing, and corporations formed thereafter subject to the Code, is constitutional.

6. Under Laws 1891, p. 267, providing that any railroad which fails to fence its track shall be liable for stock killed by reason of the want of such fence, and that, in order to recover, it shall be necessary to prove only the injury and damage, a complaint must state that the animals were killed by reason of the want of a fence.

7. It is improper to insert the undertaking on appeal in the transcript.

*Appeal from District Court, Lewis and Clarke County; Henry N. Blake, Judge.*

ACTION by Edward Menard against the Montana Central Railway Company. A verdict was directed for plaintiff, and judgment entered thereon, and from an order granting a new trial plaintiff appeals. Affirmed.

*T. J. Walsh,* for Appellant.

Citing: Constitution, Art. XV, Secs. 1, 3, 8; *Hays* v. *Com.*, 82 Pa. St. 524; *DeMoss* v. *Newton*, 31 Ind. 219; *Price* v. *Hopkins*, 13 Mich. 318; *McGahey* v. *Virginia*, 135 U. S. 662; *Pereles* v. *Watertown*, 6 Biss. 79; Civil Code, Sec. 950 *et seq;* Cooley on Const. Lim. 483 *et seq; Bates* v. *Fremont Co.*, 57 N. W. 72; *Hindman* v. *Navigation Co.*, 22 Pac. 116; *Atchison* v. *Shaft*, 6 Pac. 908; *State ex rel.* v. *Mayor*, 19 Mont. 518; *Hook* v. *Hall*, 6 Pac. 422; *Heilbron* v. *Centerville*, 76 Cal. 8; *Wheeler* v. *Kassabaum*, 76 Cal. 90; *Bode* v. *Lee*, 102 Cal. 583; *Goodnow* v. *Parker*, 112 Cal. 437; *Taylor* v. *Hill*, 115 Cal. 143; *Spanagel* v. *Dellinger*, 28 Cal. 278; *Brison* v. *Brison*, 27 Pac. 186; *Scherrer* v. *Hale*, 9 Mont. 63; *City* v. *Albertose*, 8 Mont. 499; *Howland* v. *Oakland*, 42 Pac. 983; *Deither* v. *Lumber Co.*, 35 N. E. 843; *Society* v. *Lackland*, 3 Am. St. Rep. 298 and notes; *Calvert* v. *R. R. Co.*, 34 Mo. 242, S. C. 38 Mo. 467; *Minter* v. *R. R. Co.*, 82 Mo. 128; *Hurly* v. *Mo. Pac.*, 57 Mo. App. 676; *Donegan* v. *Erhardt*, 119 N. Y. 468; *Market St. Ry. Co.* v. *Hellman*, 109 Cal. 571; *McGowan* v. *McDonald*, 111 Cal. 57.

*A. J. Shores,* for Respondent.

**PIGOTT, J.** This was an action to recover $250 as damages for the killing by defendant in 1895 and 1896 of three cows and one horse, the property of plaintiff. The complaint is in two counts, stated as two causes of action. In the first count the allegations are to the effect that the defendant, a domestic railway corporation, so negligently ran and managed its trains that they ran over the animals, which had casually strayed upon the track. The second cause of action is stated to consist of the matter alleged in the first, together

with the further averments that the "defendant did not make
or maintain a good and sufficient, or any, fence on either side
of its track; that the said cattle were killed by its engines and
cars upon its line of road which passed through and along the
property thereof; that $250 is the fair market price of the
same; and that the killing occurred without the fault or neg-
ligence of plaintiff." Defendant, in its answer, admitted its
corporate character, but denied the other allegations of the
complaint, and pleaded the bar of the statute of limitations.
At the trial the evidence tended to prove that all the animals
were killed on defendant's track, and by its engines, and that
defendant did not maintain a fence at the point where the kill-
ings took place. Two of the animals were killed in 1895, and
two in 1896. As to those killed in 1895, valued at $185, the
testimony showed that they were found dead or dying near
the track, and that the employes of defendant, acting under
its instructions, and as part of their regular duty, skinned the
animals, and took the hides to the nearest station. As to the
cows killed in 1896, there was testimony given by plaintiff
that the trains which killed them made no stop, paid no atten-
tion to them, and that the whistle was not blown, although
the animals could have been seen by those on the engine for
the distance of a mile, at least, before they were struck. It
was shown that defendant became a corporation in 1886, un-
der the provisions of the statutes then in force, and since has
been such corporation. Defendant offered no evidence. On
plaintiff's motion, the court peremptorily directed the jury to
find for plaintiff in the sum of $250, the value of the animals;
defendant excepting. A verdict having been returned in ac-
cordance with the instruction of the court, defendant moved
for a new trial for errors in law, which was granted, and from
that order plaintiff appeals.

1. It is earnestly asserted by the plaintiff that the District
Court granted the motion for a new trial upon the sole ground
that the statute of limitations barred recovery for the animals
killed in 1895, and that, therefore, this Court is restricted to
an examination of the soundness of the reason given for mak

ing the order. But the premise upon which the contention rests is unsound. The record proper does not disclose that the order was made for the reason stated by plaintiff. The motion was made upon the ground of errors in law committed at the trial, and excepted to by defendant. The order *nisi* for a new trial is that "the motion for a new trial be granted, unless the plaintiff shall within ten days * * * consent to release all of said verdict excepting the sum of $65, and that, upon the filing of such consent in writing by the plaintiff, said motion be overruled, and the judgment hereinbefore entered be modified accordingly;" and the order appealed from, after reciting that plaintiff declined to release any part of the verdict and judgment, merely sustains the motion for a new trial. In making the conditional order, the court delivered an opinion,—a copy of which is in the transcript,—to the effect that the bar of the statute intervened as to the animals killed in 1895; but, however great an assistance it might be to this Court, the opinion is not part of the record, and cannot be resorted to for the purpose of adding to the order sought to be reviewed. Under Section 438 of the First Division of the Compiled Statutes of 1887, such an opinion, when filed, was required to be made part of the transcript, to aid the court in the determination of the issues (*Fant* v. *Tandy*, 7 Mont. 443, 17 Pac. 560), but we can find no such provision in the Code of Civil Procedure of 1895. Conceding, however, that the premise is true, and that the record shows the new trial to have been granted upon the sole ground—now abandoned by defendant—that the right to recover for the cattle killed in 1895 was barred by the statute, the conclusion drawn therefrom by plaintiff is unwarranted; for, this Court must examine into all the errors of law specified, and, if it appear from the whole record that the new trial was not improperly granted, the order will be affirmed. The true rule, with the reasons underlying it, may, we think, be thus stated: The losing party has the right to ask for a new trial upon any one or more of the grounds recognized by the statute; it is the duty of the court to grant a new trial whenever it shall

appear that statutory grounds exist therefor; the statement or bill of exceptions resembles, in its nature, a complaint, and this is attacked by the specifications very much as the complaint is assailed by a demurrer. If, for example, the demurrer be for insufficiency, for defect of necessary parties, and for want of jurisdiction over the subject-matter, and the court sustains it upon the single ground that there is a defect of parties, and judgment is thereupon entered for defendant, whereas the complaint is bad for either or both of the other reasons, but is not obnoxious to the objection upon which the court based its decision, this Court would nevertheless affirm the judgment.

A wrong reason for a decision does not invalidate it, —the result may be right, though the reason given for making it be wrong. So with the order granting a new trial. The specific or particular reason given for making it is usually unimportant;—in illustration: A new trial may be granted for supposed error in an instruction, and for that reason alone; if the instruction be correct, but prejudicial error was committed in the admission or the rejection of evidence, or in any other particular within the grounds assigned for the motion, and specified in the statement or bill, the party aggrieved will be entitled to a trial *de novo*, notwithstanding the reason by which the right result was reached was wrong. Were the rule otherwise, miscarriages of justice would frequently occur. The moving party may be entitled to a new trial, which the court grants for the wrong reason; he cannot maintain an appeal from the order made at his instance; the judgment is canceled, or at least suspended, while the order remains in force, and he cannot appeal from it: therefore, if the order granting a new trial be reversed by the Supreme Court, the party aggrieved by the verdict and entitled to a new trial would be without redress. The rule ought to be limited to this extent: If in the order granting a new trial the District Court explicitly excludes the ground that an abuse of discretion has been committed, or that the evidence is insufficient, and the record fails to establish affirmatively a clear abuse to

the moving party's prejudice in the one case, or shows-a sub-
stantial conflict in the other, then this Court should not affirm
the order, unless it may be justified on other grounds.
Where there are several specifications in support of an appli-
cation for a new trial, and among these is included an alleged
abuse of discretion, or the insufficiency of the evidence, or
both, and in granting the motion the court expressly excludes
the particular ground or grounds just mentioned, this Court
will not consider it or them, unless it appear that the duty
was incumbent upon the District Court to grant a new trial
therefor.   If the grounds so excluded refer to mere matter
of discretion, among which may be reckoned the determina-
tion of the question of the preponderance of conflicting evi-
dence, whether received at the trial, or in support of the mo-
tion for a new trial, as well as numerous questions of mixed
law and fact, the order granting a retrial will not be affirmed,
although the court below would not have erred in granting a
new trial therefor, unless some other ground would justify the
order.   This rule, in part, is delared in *Kauffman* v. *Maier*,
94 Cal. 269, 29 Pac. 481.

2.   Since the submission of the appeal, defendant has aban-
doned the point that the statute bars the remedy for the kill-
ing of the cattle in 1895.   The only error specified in the
statement on motion for a new trial, and relied upon here to
support the order appealed from, is the peremptory instruc-
tion to find for the plaintiff in a sum equal to the value of all
the animals.   It is conceded that the testimony given by plain-
tiff tended to establish that the actual negligence of the de-
fendant was the proximate cause of the death of the cows
killed in 1896, and defendant admits the right of the court to
direct the jury to return a verdict for their value upon his
testimony alone.   By this admission we are relieved of the
necessity of deciding whether the evidence of a party directly
interested is, as a matter of law, to be deemed conclusive
proof.

3.   The only question, then, is whether the court erred in
directing a verdict for the value of the animals killed in 1895.

With respect to these, there was not sufficient evidence to establish so clearly the liability upon common-law principles.as to warrant the direction of a verdict,—we do not, however, intimate that there was enough to go to the jury on the issue of negligence; but plaintiff sought also to recover upon the theory that defendant is liable under Sections 950 and 951, which are part of Chapter III of Title VIII, Part IV, Division I of the Civil Code. Section 950 requires railroad corporations to make and maintain a good and sufficient fence on either or both sides of their track and property, in default whereof, if their engines or cars shall kill or maim any domestic animals upon their line of road which passes through or along their property, they must pay to the owner a fair market price for the cattle killed or maimed, unless it occurred through the neglect or fault of the owner. Section 951 declares that every railroad corporation which negligently injures or kills any domestic animal by running an engine or car over it shall be liable to the owner for the damages sustained by him, and that the killing or injury shall be *prima facie* evidence of negligence on the part of the company. If either of these sections is applicable to defendant, the instruction was correct, and the new trial was erroneously granted.

Defendant invokes the provisions of Sections 400 and 401 of the Civil Code. They read as follows:

"Sec. 400. Any corporation formed under the laws of the territory or state of Montana, except those dissolved by the provisions of Section 393, and still existing, may at any time within the period limited for its duration elect to continue its existence under the provisions of this Code applicable thereto. Such election may be made at any annual meeting of the stockholders, or members, or at any meeting called by the directors expressly for considering the subject, if voted by stockholders representing a majority of the capital stock, or by a majority of the members, or may be made by the directors upon the written consent of that number of such stockholders or members. A certificate of the action of the directors, signed by them and their secretary, when the election is made by their

unanimous vote, or upon the written consent of the stock-
holders or members, or a certificate of the proceedings of the
stockholders or members, when such election is made at any
such meeting, signed by the chairman and secretary of the
meeting, and a majority of the directors, must be filed in the
office of the clerk of the county where the original articles of
incorporation are filed, and a certified copy thereof must be
filed in the office of the Secretary of State; and thereafter the
corporation shall continue its existence under the provisions
of this Code which are applicable thereto, and shall possess
all the rights and powers, and be subject to all the obliga-
tions, restrictions and limitations prescribed thereby.

"Sec. 401.    No corporation formed or existing before 12
o'clock noon upon the day which this Code takes effect, is af-
fected by the provisions of Part IV of Division First, of this
Code, unless such corporation elects to continue its existence
under it as provided in Section 400; but the laws under which
such corporations are formed and exist are applicable to all
such corporations, and are repealed, subject to the provisions
of this section."

Defendant maintains that since it is a corporation formed in
1886 under the laws of Montana, and was existing as such be-
fore 12 o'clock noon of July 1, 1895, when the Civil Code
took effect, it is not subject to the operation of Sections 950
or 951, there being nothing to show that it has elected to con-
tinue its existence under the provisions of the Code. Plaintiff
contends that Section 401 simply preserves to nonelecting cor-
porations in existence at the time the Code went into effect
such laws as relate to the formation, existence and powers of
such corporations, and that in all other respects the Code pro-
visions control.    We are of the opinion that defendant's posi-
tion is correct.    The question here involved was fairly pre-
sented, and squarely met and decided, in *Murphy* v. *Pacific
Bank*, 119 Cal. 334, 51 Pac. 317.    The court, in that case,
having before it for consideration the interpretation of two
sections, one being identical with Section 401, *supra*, and the
other similar to Section 400, *supra*, said:    "It will be ob-

served that as to corporations existing at the time the Code took effect, and which elect to continue their existence under it, 'the provisions of the Code which are applicable thereto' govern them, and that they 'possess all the rights and powers,' and are 'subject to all the obligations, restrictions and limitations prescribed thereby;' and that corporations which do not so elect are not 'affected by the provisions of Part IV of Division 1,  *  *  *  but the laws under which such corporations were formed and exist are applicable to all such corporations.' The distinction here made between those corporations which should elect to come under the code provisions and those that did not is clearly manifest. If no such distinction was intended, it would have been quite sufficient to say that no corporation shall cease to exist because of the adoption of the Code, but thereafter all corporations existing at the time the Code takes effect shall be governed by its provisions alone; and there would have been in that case no necessity or propriety for an election on the part of the corporation to come under its provisions."

When carefully read in connection with other sections of the Code, the design of Section 401 is reasonably clear. If the will of the Legislature was to make the provisions of Part IV of Division 1 applicable to nonelecting corporations formed and in life when the Code became operative, its design would probably find expression in some language such as this: "Every corporation hitherto organized and now existing shall hereafter be subject to and governed by the provisions of Part IV of Division 1 of the Civil Code, and all statutes in force immediately prior to the taking effect of this Code which concern or relate to corporations are repealed; but such repeal shall not affect the formation or existence of corporations heretofore formed and now existing." The first clause of Section 401 declares that no corporation formed or existing before noon of July 1, 1895, is affected by the provisions of Part IV of Division 1, unless the corporation elects to continue its existence under the Code in the manner prescribed in Section 400. This is sufficiently broad to exempt corpora-

tions existing at the time the Code went into effect from its provisions. The latter clause provides, in substance, that the laws under which such corporations are formed and exist are applicable to them only, being repealed as to all other corporations. Provisions other than those relative to their formation and existence are comprehended by the expression, "the laws under which such corporations are formed and exist;" and all these were intended to remain in respect of such existing corporations, and were repealed, subject to the provision in the first clause that no existing domestic corporation shall be affected by the provisions of Part IV of Division 1. The provision just spoken of does not declare that no existing corporation shall be affected by those provisions of Part IV relating to the formation and existence only of corporations. The purpose of Section 401 was not to prevent the annihilation or dissolution of existing corporations, for Section 400 recognizes existing corporations, and their right to continue without availing themselves of the privilege of election thereunder; moreover, all prior vested rights in general are carefully preserved by Sections 4651, 4654 and 4672 of the Civil Code. Were the meaning of Section 401 obscure, reference to Section 400 would serve to interpret it; for the latter section provides that, after filing the certificates required thereby, "the corporation shall continue its existence under the provisions of this Code which are applicable thereto, and shall possess all the rights and powers and be subject to all the obligations, restrictions and limitations prescribed thereby." In Title I, Part IV., Division 1, are sections referring, respectively, to "corporations heretofore formed," to "corporations that may be hereafter formed," and to "corporations" or "all corporations." If all existing corporations were intended to be affected by the provisions of Part IV of Division 1 of the Civil Code of 1895, other than those relating to their formation and existence, to make mention of or to distinguish between corporations existing before the Code and those organized under it would seem unnecessary. We think that Section 401, as amended by the act approved March 5, 1897,

(Laws 1897, p. 231) correctly interprets that section as originally passed.

It may be undesirable or inconvenient that corporations formed before July 1, 1895, should be governed by statutes differing from those applicable to corporations of the same kind organized thereafter; but any suggestion that such distinction is repugnant to the constitution is without merit. The point was necessarily involved in *Home Building & Loan Association.* v. *Nolan, Attorney General,* 21 Mont. 205, 53 Pac. 738, and held untenable.

Neither Section 950 nor Section 951 applies to defendant, and, in directing the jury to find for plaintiff as to the value of the animals killed in 1895, the court erred, unless the plaintiff has brought his case within the terms of some other provision of statutory law.

4. Plaintiff insists that he was entitled to recover under the act of March 2, 1891, entitled "An act requiring railroad companies to pay for damages to stock" (Laws 1891, p. 267). So much of the act as is relevant provides that any corporation operating a railroad in Montana "that fails to fence the same by fence suitable and amply sufficient to prevent cattle, horses, sheep and other live stock from getting on said railroad, at all points where such right to fence exists, shall be liable to the owner of any such stock injured or killed by reason of the want of such fence for the value of the property or damages caused, unless the same was occasioned by the willful act of the owner, or his agent. And in order to recover it shall only be necessary for the owner to prove the injury or destruction of his property and the value thereof. * * *"

We are of the opinion that the complaint, for failure to state that the animals were killed by reason of the want of a fence at points where the right to fence existed, is insufficient to sustain a recovery under the act of 1891, assuming it to have been in force as to defendant. True, the act delares that in order to recover it shall only be necessary for the owner to prove the killing of the animals, and their value; but this lays down a mere rule in respect of the amount of evidence or

*quantum* of proof, which in no wise aids the complaint,—the
rule has the effect only of dispensing with the necessity of
making some proofs, which, in the absence of the rule, might
be deemed indispensable to a recovery, and does not supply
the omission of the complaint to charge facts constituting a
cause of action created by, and arising from the provisions of,
the statute. In actions brought under the act of 1891, the
complaint must allege, and it seems the evidence should show,
that the cattle were killed by reason of the want of such a
fence as the statute requires at points where the corporation
had the right to fence. (*Schmidt* v. *Railway Co.*, 99 Iowa,
425, 68 N. W. 715; *Wall* v. *Railway Co.*, 89 Iowa, 193, 56
N. W. 436; *Manwell* v. *Railway Co.*, 80 Iowa, 662, 45 N.
W. 568; *Comstock* v. *Railroad Co.*, 32 Iowa, 376; *Rowland*
v. *Railway Co.*, 73 Mo. 619.) That part of the act of 1891
quoted is, with but slight change in phraseology, identical
with a provision of Section 1289 of the Iowa Code, and seems
to have been adopted therefrom. The Supreme Court of Iowa,
in the cases cited, interprets the provision and announces the
law as here stated.

In *McCauley* v. *Railway Co.*, 11 Mont. 483, 28 Pac. 729,
the facts and the statute upon which the decision was made
were so different from those presented on this appeal as to
make the case not in point.

The complaint does not present a case within the terms of
the act of 1891, nor was it drafted upon the theory that said
act applied. In directing a verdict, the court mistakenly as-
sumed that the plaintiff was entitled to recover for the animals
killed in 1895, upon the ground that he had established de-
fendant's liability under Sections 950 and 951 of the Civil
Code. As to the right to recover for the animals last men-
tioned, there is nothing in the complaint justifying the in-
struction. The court therefore misdirected the jury to de-
fendant's prejudice, and did not err in setting aside the ver-
dict and granting a new trial.

We note that a copy of the undertaking on appeal is im-
properly inserted in the transcript. It is not one of the pa-

pers required to be sent up.  (*Murray* v. *Hauser*, 21 Mont. 120, 53 Pac. 99.)

Let the order granting a new trial be affirmed.

*Affirmed.*

BRANTLY, C. J., and HUNT, J., concur.